## No. 11,275.

### COMSTOCK, et al. *v.* BIVENS, et al.

Decided October 25, 1925.

Proceeding under the workmen's compensation act. Judgment disallowing claim.

### *Reversed.*

1. WORKMEN'S COMPENSATION—*Course of Employment.* As a general rule no compensation is recoverable by an employe who is injured while on his way to or from work, but there are exceptions to the rule.

2. *Course of Employment.* One who was employed to carry mail, using an auto truck for that purpose, which by the contract he was obliged to furnish, after delivering mail to the post office, drove the truck away' presumably to park or place it in a garage. He stopped at his home and was accidentally killed by the discharge of a rifle which he was removing from the truck. Held, that the accident arose out of and in the course of his employment.

3. *Employment—Carrying Firearms.* An employe carrying United States mail in a sparsely settled district held justified in carrying firearms as a precautionary measure.

4. *Review—Testimony.* Courts are forbidden by statute from passing upon objections to the admission of evidence in workmen's compensation hearings.

5. *Evidence—Inference—Conclusion.* Inferences and conclusions to be drawn from the evidence in workmen's compensation cases, are for the commission and not for the courts.

6. *Employe—Government Service.* The contention that a federal star route contractor and his employes carrying mail, are not subject to the provisions of the state workmen's compensation act, because engaged in the performance of a public function, overruled.

*Error to the District Court of Montrose County, Hon. Thomas J. Black, Judge.*

Messrs. MOYNIHAN, HUGHES, KNOUS & FAUBER, Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, Mr. JOHN F. REYNES, Assistant, for plaintiffs in error.

Messrs. BURGESS & ADAMS, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

UPON the hearing of the claim of the widow and minor children of Allen B. Comstock, deceased, by the Industrial Commission, the findings of fact were for the claimants and compensation was awarded to them for Comstock's death which occurred while he was in the employment of Bivens and Nelson, a copartnership. Upon the application of the employers the case was certified by the commission to the district court of Montrose county, which held the commission's findings of fact and the judgment thereon erroneous and thereupon ordered the same set aside. A review of that order of the district court by the claimants is the object of this writ.

Bivens and Nelson were operating a stage route in southwestern Colorado and in connection therewith carried the mails of the United States government under a star route contract. They employed Comstock to carry the mails over that portion of the star route from Naturita to Paradox and to post offices between these two towns. By the terms of the contract of hiring, Comstock was to furnish his own services and an auto truck as a vehicle for carrying mails and his fixed compensation was $225 per month. Additional compensation for carrying parcel post mail was allowed him, the amount of which depended upon the amount of packages he carried. Comstock was permitted by his employers to carry passengers and freight on his truck and his compensation was such as he arranged for with the passengers and shippers. With this

feature of the contract Bivens and Nelson had no concern. When Comstock began the work of carrying the mails under this employment, he carried a revolver which he afterwards exchanged for a rifle. On his last trip from Naturita to Paradox, after Comstock reached the post-office at the latter place and had delivered the mail to the postmistress, and after receipting for a parcel post package which he was to deliver to some consignee apparently on the next morning on his trip from Paradox to Naturita, he drove his truck from in front of the post office for a short distance along the public highway and stopped in front of his own home and apparently while taking his rifle out of the truck in some manner not disclosed by the evidence, there being no eye witnesses, the weapon was discharged and Comstock died in a few minutes as the result of the wound. The Industrial Commission found from the evidence that Comstock was one of four or more employees of the employers engaged in like service and that he was killed in the line of his employment, that the accident arose out of and in the course of his employment and that the fatal shot was not intentionally self-inflicted.

The employers contend that the evidence is conclusive that neither they nor their employee are subject to the provisions of our Workmen's Compensation Act and that the accident did not arise out of or in the course of Comstock's employment. The district court, as shown by its opinion in the record, held that there was no evidence at all before the commission to sustain its findings that Comstock at the time of the accident was serving his employers, but that in driving from the post office to his home after having delivered the mail he was merely going from the place of his work on his own business and after his service to his employers had ended. Apparently the district court conceded or assumed that both the employers and the employee were subject to the provisions of the act and rested its decision solely upon the proposition above stated.

1. In *Industrial Commission v. Anderson*, 69 Colo. 147, 169 Pac. 135, L. R. A. 1918F, 885, we held that in the absence of special circumstances bringing the accident within the scope of the employment, no compensation is recoverable by an employee who is injured while on his way to or from work. This is in accordance with the general rule. To this general rule, however, there are exceptions as well established as the rule itself. Illustration is found in our own decisions. *Industrial Commission v. Hunter*, 73 Colo. 226, 214 Pac. 393, is a case where a water commissioner, whose duties required him to travel over his district, was riding in the automobile of another, who had sold him a car, and was then making inspection of streams and ditches on the way from his home to the automobile agency. He was shot and killed by a person who attempted to steal the car. We held that this death was proximately caused by an accident arising out of and in the course of his employment. *Contracting Co. v. Industrial Commission*, 74 Colo. 206, 219 Pac. 1075, is a case where an employer was engaged in laying paving between Manitou and Colorado City. The employee's duty was to watch and patrol the line of work from dusk until dawn. About 7 o'clock in the evening the employee, while running for the avowed purpose of boarding a street car to go to his home, fell in front of the car and was killed. The line on which the car was moving ran along the street on which his duties lay. The employer claimed that since the employee's purpose was to take the car to go home to supper he had separated himself from the line of his work and was no longer in the course of his employment. As the employee had been engaged in the work we said that it was for the respondents to show that he had left it, and since it was possible for the employee while riding on the car in question to inspect the work, we could not hold that he was not engaged in the line of his employment at the time of the accident. 1 Honnold on Workmen's Compensation, section 114, says where an employee is doing something which,

though not strictly in the line of his obligatory duty, is still doing something incidental to his work, and while doing the same is injured, the accident causing the injury may properly be held to arise out of and in the course of employment, and he will be entitled to compensation. We think the case in hand comes within the exception to the general rule.     Indeed, in *Industrial Commission v. Aetna Co.*, 64 Colo. 480, (174 Pac. 589, 3 A. L. R. 1336) we said at page 487: "All those things that he (the employee) is entitled to do by virtue of his contract he is for the purposes of the act employed to do, and they are therefore within his contract of employment." In the instant case the contract between the employers and employee required the employee to furnish his auto truck as the instrument or instrumentality with which he performed his service to his employers of carrying the mails to the respective post offices along the route between Paradox and Naturita.     It was an essential part of his employment to travel from one terminus of his star route to the other terminus.     He adopted not only a reasonable, but the very facility for such travel, which the contract called for, viz.: travel in an auto truck.     When Comstock delivered the mail to the postmistress on the evening of the day when the accident occurred he could not indefinitely leave his automobile in the public highway or make of the same a place of storage.     It was necessary for him to put it in his garage or some place on his own or rented premises.     While there is no direct evidence as to what Comstock's intentions were in driving from the post office to his home, his course was what he usually pursued after delivering the mail.     He was found lying near the car and had taken the rifle from the automobile in the place where he usually carried it on his trips and apparently intended to put it away in his house when it was discharged.     The car being the instrument or facility that he used in performing his work of carrying the mail, it is a fair inference from the testimony that he was preparing to store, or was engaged in storing, his automobile

for the night at the time the accident occurred. This is analogous to what occurs, for example, when a carpenter, who quits work at the end of the day on a house which he is building, goes across a street or to some other nearby place to store his tools for the night. We think that Comstock was doing the work for which he was employed when this accident occurred and it arose out of and in the course of his employment.

It is argued, however, that Comstock was not required either by regulation of the post office department or by his employers to carry this rifle; that his work could have been done without it and that it was his own carelessness that caused his death. Even if we assume that, in such circumstances, this would ordinarily defeat a recovery, the testimony here is that it was and is the custom for mail carriers in this desolate and thinly populated community to carry some weapon as a precautionary measure for their own protection and to safeguard the mails. It is true that the post office department did not require this, though it usually granted permission when requests were made therefor. An employee in selecting the means and adopting the method for doing his employer's work is allowed some latitude and in view of the testimony that carrying weapons was a general custom of mail carriers in this region and that acts of lawlessness had been committed in this vicinity and that the employers knew that Comstock was carrying a rifle on his trips and made no objection, we hold that it was a reasonable precaution for Comstock to take this weapon with him on his route in carrying the mails. But the employers urge that Comstock did not carry the weapon to protect his person or to safeguard the mails but to kill wild game on his travels. There is testimony that the deceased so stated in his lifetime. Such may have been one object. The district court said that this testimony for the employers, like that of a similar nature for the claimants that the weapon was a precautionary and legitimate measure, was purely hearsay and should be disregarded. Probably that would be so

in a trial in a common law action but under the Workmen's Compensation Act strict rules of evidence applicable to such actions are not always enforced. Be that as it may, neither party objected to this hearsay testimony nor did either move to strike. By their conduct each party waived objection to hearsay evidence of his adversary and permitted the same to be considered by the Commission. Both are precluded now from assigning error upon its admission. Besides, and this is controlling, the courts are forbidden by the statute to pass upon objections to admission of testimony. *Zook v. Industrial Commission,* 75 Colo. 41, 223 Pac. 751.

It is further contended by the employers that it is just as reasonable to hold that Comstock's drive from the post office to his own home was but a part of his trip to the home of the consignee of the parcel post package for which he had given a receipt to the postmistress, and which was not, as the employers say, within the terms of employment, as that he was taking his car to his garage for the night. However that may be, as Comstock's death precludes any testimony from him as to his object, it was for the Industrial Commission, and not for the courts, to draw its own inference and the commission reached its conclusion that on this drive Comstock was engaged in serving his employers by putting away for the night the facility for performing the work which the contract required him to utilize.

2. Though the district court seems not to have rested its decision upon the proposition, counsel for the employers here in a vigorous and plausible argument contend that neither the employers nor the employee come within the provisions of the Workmen's Compensation Act. First, they say that one who holds a contract with the United States for carrying its mails, and all of his servants or employees, are engaged in the performance of a public function and that the employer holding such a contract cannot be held responsible for the negligence of his employee who actually carries the mail for any

loss or injury sustained by third parties at the carrier's hands. In the second place it is said that the mail carrier is not in a true sense an employee, or in the service, of the contractor but is in the service of the government itself and, therefore, the Workmen's Compensation Act does not apply. Perhaps the leading case cited in support of the contention is *Conwell v. Voorhees,* 13 Ohio, 523, 42 Am. Dec. 206. In this case the defendants were owners and proprietors of a stage coach running between Oxford and Cincinnati and contractors for the carrying of the United States mails between these places. A letter containing money came into the possession of the carrier employee of the contractors along with the mail for Cincinnati which was never received, for loss of which this action was brought. The court said that the case turned upon the fact whether a mail contractor is regarded in law as a common carrier or a public agent. If a common carrier the plaintiff had made out his case. The court, however, held that the mail contractor had no contract with those who transmitted articles by the public mails and receives no fees or reward from them. His contract is with the government of the United States in the performance of which he acts as a public executive of a public function. He is remunerated by the government. He acts for that government in the performance of a public function. This case was followed by *Hutchins v. Brackett,* 22 N. H. 252, 53 Am. Dec. 248. In this case the court said that a mail carrier acts as a public agent in the discharge of a public duty and not as the mere servant of the contractor who employs him. He takes an oath faithfully to discharge his duties and is subject by law to various penalties for a violation of it. In these cases the contractor was held not liable for loss sustained by third parties who were either senders or receivers of the mail in question that was destroyed or stolen by the employee who actually physically carried the mails. In *Bankers' Mutual C. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co.,* 117 Fed. 434, 54 C. C. A. 608,

65 L. R. A. 397, the same rule is announced and a number of cases are there cited in the opinion. We do not think these cases are in point. It may be that one who actually carries the mail for his employer who holds a mail contract from the United States, performs a public function, and that the contractor is not liable in damages to senders or receivers of the carried mail which such carrier steals or destroys and for the reason given. This does not, however, destroy the relation of employer and employee. The carrier is not the employee of the government. 1 Honnold on Workmen's Compensation, sec. 67, p. 220. He is the employee of the contractor, and he is also something more, the servant of the United States in carrying the mail. The fact that the employers of the mail carrier are not liable to third parties for the negligence or dishonesty of the mail carrier is not equivalent to saying they are not liable under this act to dependents of the carrier for injury to him in the course of the employment. These very cases hold that the government contractor in a star route contract is responsible for his own negligence, but not for that of the mail carrier whom he employs, but this is a far different question from the one as to whether the relation of employer and employee exists between the contractor and the mail carrier, and whether the employer is liable to the dependents of the employee under the Workmen's Compensation Act. There are cases which are cited in Shearman & Redfield on Negligence, section 180, which hold a different doctrine from the foregoing cases and one of them is *Sawyer v. Corse,* 17 Grattan's Reports, (Va.) 230, 94 Am. Dec. 445.

The Federal Compensation Act does not include or apply to Bivens and Nelson, and Comstock. We see no reason why their relative rights and remedies are not those prescribed by our Workmen's Compensation law. In *Rector v. Cherry Valley Timber Co.,* 115 Wash. 31, 196 Pac. 653, 13 A. L. R. 1247, the employee Rector enlisted in the United States army as a volunteer. In one of the war acts of Congress such an enlisted man might be ordered by his

superior officer to assist contractors of the United States in getting out timber they were furnishing to the United States for use in some so-called war work. This soldier, while detailed in assisting the government contractor in getting out the timber, was injured. He brought a common law action in the state court of Washington for damages thus sustained on the theory that the Workmen's Compensation Act did not apply to his case. The Supreme Court of Washington held against this contention and said that the Workmen's Compensation Act of that state furnished the only remedy for him and had taken away his common law right of action. We think the principle of that decision is applicable here. Conceding that Comstock was performing a public function, nevertheless he was actually employed by the holders of a star route contract and though the star route contractors might not be responsible at common law to third parties for the employee's negligence, yet if the employee is injured in an accident arising out of and in the course of his employment and while engaged therein, our Workmen's Compensation Act affords a remedy which is not taken away by the mere circumstance that Comstock was at the time also engaged in the performance of a public function. In the Washington case Hector was in the service of the federal government and as he had voluntarily enlisted he thereby recognized that he might be·called upon to assist the government contractors in getting out timber although he enlisted as a soldier in the military service.

We are clearly of the opinion that upon neither of the foregoing grounds can the decision of the district court be sustained. It is, therefore, reversed and the cause remanded to that tribunal with instructions to set aside its judgment and in lieu thereof render a judgment dismissing the application of the employers and affirming the award of the Commission.