[Civ. No. 1310. Fourth Appellate District.—March 6, 1934.]

R. NURMI et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CHESTER T. MOORE, Respondents.

Colding, Hale, Crawford & Myers for Petitioners.

Everett A. Corten for Respondents.

MARKS, J.—For about seven years prior to February 10, 1933, Chester T. Moore had been employed as a truck driver, salesman, delivery-man and collector by Nurmi's Bakery in Fresno. His duties were to solicit sales of and make delivery of bakery products and mayonnaise and make collections. His route ran from Fresno along the highway paralleling the railroad tracks and into Tulare County. He usually left the premises of his employer at about 4:30 o'clock in the morning, returning late in the afternoon with collections amounting to between $50 and $70. He usually traveled alone.

He was required to make deliveries in premises which were dark and secluded. For a considerable time he had been accosted daily by from fifteen to twenty men who asked gifts of bread. A bakery truck had been held up near the town of Goshen on his route and on numerous occasions bread had been stolen from his truck. He testified further concerning those requesting bread, "If you don't give them a loaf they act as if they would knock you in the head, and they give you a cussing if there is two or three of them. They are bad business." About a year before he was injured he provided himself with a 410 gauge breech-loading single barrel shotgun. The bottom of the seat of his truck was a metal plate and upon it rested two separate leather cushions. He kept the shotgun between the cushions with the top of the barrel down and the muzzle pointing toward the dash. He testified that he had procured the gun to protect himself from injury and his employer's property from being stolen. Neither Nurmi nor his wife, the owners of Nurmi's Bakery, had any knowledge that he carried this gun. Lynn L. Huron, an employee of Nurmi's Bakery,

knew that appellant carried the gun for the protection of himself and his employer's money and property and that the gun was loaded. He also knew the place and position in which the gun was carried in the truck. Huron bore the title of route foreman for Nurmi's Bakery and had charge of all route drivers.

On February 10, 1933, Moore drove his truck off the left-hand side of the highway upon which he was traveling to make a delivery at the store of a customer. After making the delivery he re-entered the truck and proceeded to the left edge of the highway, where he stopped, slid over to the right side of the seat, looked back to see if there were any other drivers approaching from the rear and slid back to the left side of the seat preparatory to driving onto the highway. In sliding along the seat the shotgun was cocked and discharged, the charge striking him on the outside of one of his legs about three inches below the knee, causing powder burns and a gunshot wound which became infected. The Industrial Accident Commission awarded compensation to Moore and this proceeding is taken to review this award.

 The petitioners admit that the injury was received in the course of Moore's employment and while he was on the business of his employer, but urge that the injury did not *arise out of his employment,* as he had provided the gun and had carried it without the knowledge or consent of his employer. Respondents reply ''that there is a direct causal connection between the condition under which the work of the employee was required to be performed and the resulting injury and that, therefore, the injury must be said to have arisen out of his employment''.

We have been cited to no case in which a similar state of facts has been considered in any court within the United States and as counsel have been diligent in their citation of authorities we assume there is none.

Petitioners urge that the case of *Ward* v. *Industrial Acc. Com.,* 175 Cal. 42 [164 Pac. 1123, L. R. A. 1918A, 233], is authority for our annulling the award made to Moore. In that case John Ward had a contract to dig post holes on land several miles distant from the city of Santa Barbara. William Ward, who was employed by his brother John to do general labor, was directed by John to drive a team and wagon

which contained tools to the place where the post holes were to be dug. Thomas Ward, a nephew of John and William, was employed by John to accompany William to the scene of the work and to take care of the horses while the work was in progress. Thomas took a shotgun with him, intending to hunt rabbits after working hours. This gun had no connection with nor bearing upon any part of the work which the two were employed to perform. John saw the two depart with the shotgun, which was accidentally discharged during the progress of the journey, injuring William. In this case the Supreme Court annulled the award of compensation to William. But this case is easily distinguishable from the instant case. The shotgun was taken by Thomas, not to be used in any manner in connection with the employment of either William or himself, but to be used for his own pleasure and in accomplishing a purpose of his own after his hours of employment had ceased. In the instant case Moore obtained the gun and took it with him at least in part for the protection of his employer's property against theft.

Moore was entrusted with the possession of his employer's truck, personal property, and the money which he collected. Thefts from his truck were proven and his duties took him into places where it was not unreasonable to have presumed he might have been subjected to robbery. He was also confronted with groups of men whose attitude toward him was threatening. We do not think it unreasonable that he feared possible injury to himself and a major theft of the property under his control, even though it affirmatively appears that during the fifteen years' operation of the system of deliveries by the Nurmi Bakery no such event had occurred. The fact of his being entrusted with his employer's property and money made him to a certain extent responsible for its safety. That he took steps which he thought would aid him in protecting this property, without first consulting his employer, but with the knowledge and tacit consent of his immediate superintendent, should not of itself demonstrate that his injury did not grow out of a risk of his employment even though this risk was created by himself, but in the interest of his employer. The occasion for Moore's carrying the gun was brought on by the conditions surrounding his employment and under which he

was required to work. He carried it to assist him in performing a duty which he owed to his employer, namely, that of protecting its property. This being the .case, his carrying the gun was connected with a duty of his employment and was not entirely an unreasonable, though perhaps an inadvisable, act connected with it. We therefore conclude that under the terms of the Workmen's Compensation Act the award must be affirmed. It is so ordered.

Barnard, P. J., and Jennings, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 3, 1934.