No. 13,829.

SECURITY STATE BANK OF STERLING ET AL. *v.* PROPST
ET AL.
(59 P. [2d] 798)

Decided July 6, 1936.

Mr. Frank C. West, Mr. Robert C. Nelson, for plaintiffs in error.

Mr. Paul P. Prosser, Attorney General, Mr. M. S. Ginsberg, Assistant, Messrs. Sauter & Sandhouse, for defendants in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

This is a case in which the widow of a deceased employee filed with the Industrial Commission a claim for compensation under the provisions of the Workmen's Compensation Act. The claim was allowed and compensation awarded by the commission. Subsequently suit was instituted in the district court by the employer and insurer to vacate the award, which action resulted in a judgment for claimant. This judgment is before us for review on writ of error.

The parties will be designated as the bank, which is the employer, the insurer, the claimant and the commission, while claimant's husband will be mentioned by name, Propst, as the husband or as deceased.

The evidence is contained in stipulations of the parties from which we glean the following facts:

Claimant's huband was assistant cashier of the bank at Sterling, Colorado. He formerly had been connected with a bank at Merino, a town located twelve miles from

Sterling, which bank had been absorbed by the Sterling bank. For some three years Propst had lived in Merino, had driven his auto to work each day, and the first year was allowed mileage for the trips to and from his home. This allowance, however, had been discontinued a considerable time prior to the accident here involved as a matter of economy. According to the statement of the president of the bank, ''Mr. Propst frequently brought deposits from Merino and this act was in accordance with a custom followed in connection with bank affairs for the convenience of Merino depositors.''

On the morning of May 24, 1934, deceased had received money from two of the bank's customers in Merino for deposit and with a young lady as guest proceeded in his car from Merino to Sterling. Upon arriving in Sterling he stopped his car in front of the post office, stating to his guest that he had forgotten to mail a letter in Merino; thereupon the young lady received the letter, got out of the car and went into the post office to mail it. The record does not disclose whether or not she intended to ride further with Propst. About a month prior to this time deceased had procured from the sheriff a permit to carry a revolver, and although the permission was not procured by direction of the bank officers they knew of it shortly after Propst was given the permit. When the young lady alighted from the car Propst's revolver was lying on the seat and he picked it up to place it in the pocket of the car, when it was accidentally discharged, the bullet striking him in the right leg below the knee, passing through the leg and injuring the great toe of the left foot. He was taken to a hospital where he died June 9th following.

It is conceded that the sole issue here involved is whether decedent's accident arose out of and in the course of his employment, the error assigned being the holding of the district court that it did.

The bank and the insurer contend that in receiving money for deposit and bringing it to the bank, decedent was not performing services arising out of and in the

course of his employment, but was acting merely as agent of the several depositors. In support of this contention they quote section 2703, C. L. 1921, which provides that "Every bank shall be conducted at a single place of business, and no branch thereof shall be maintained elsewhere." They also cite cases upholding the proposition that a bank is not liable for deposits received by an officer or an employee elsewhere than at its place of business and in any event not until such deposits are actually made and placed to the credit of the depositor. This question we do not decide, because, assuming the correctness of statement, we do not consider an answer determinative of this case.

 It will be observed from the quoted excerpt from the statement of the bank's president, that these deposits were brought from Merino by the deceased "in accordance with a custom followed in connection with the bank's affairs." The attorneys for the bank and the insurer contend that this statement does not show the custom originated with or was adopted by the bank, but simply that it was a custom adopted or followed by Mr. Propst. They further contend that the words "in connection with bank affairs" have no significance other than to exclude the inference that the decedent undertook all sorts of missions for his Merino neighbors. If susceptible of this construction we think it equally susceptible of the construction placed upon it by the commission that it was the custom of the bank. In fact, the commission's construction seems to us to be entirely logical, for what an employee does in connection with bank affairs might with reason be assumed to be within the knowledge of the president of the bank, but what his custom might be with respect to performing miscellaneous errands for his neighbors, if within the knowledge of his employer, would not occur to him ordinarily as requiring exclusion. Being a custom of the bank it follows as a reasonable inference that the directing officers knew of it, and even if they did not expressly direct or acquiesce in the actions of their em-

ployee under it, nevertheless his activities in that respect were incidental to his recognized duties. Conceding that by taking the deposits Propst did not make the bank responsible to the depositors for the money before it reached its depository, it does not follow, in view of the surrounding facts and circumstances, that he was not acting in the course of his employment when he received such deposits. If at the time of the injury the deceased was doing what he expressly or impliedly was directed by his superiors to do—and we have held that he was—and the latter were vested with the authority to give him directions, then he was acting within the course of his employment. In *Comstock v. Bivens,* 78 Colo. 107, 239 Pac. 869, we said: "1 Honnold on Workmen's Compensation, section 114, says where an employee is doing something which, though not strictly in the line of his obligatory duty, is still doing something incidental to his work, and while doing the same is injured, the accident causing injury may properly be held to arise out of and in the course of employment, and he will be entitled to compensation."

Plaintiffs in error further contend that if the gathering up and bringing of deposits to the bank was within the course of deceased's employment, that when he went to the post office to mail a letter, he stepped aside from the course of that employment. We cannot agree with this contention. On this matter the finding of the commission was: "The Commission finds that the accidental shooting had nothing whatever to do with the fact that the decedent had stopped at the post-office. Apparently he was in the act of putting away his gun, an act which was performed at the end of the journey, and which might as well have been performed in the front of the post-office as well as in front of the bank building." We think this finding is supported by reasonable inferences drawn from the record.

The further contention is made that the accident did not arise out of the employment for the reason that

the gun causing it had no connection with the employment. It is stipulated that the president of the bank knew of the gun being carried and made no objection to it. The permit obtained from the sheriff was in the following words: "This is to certify that I, Ray R. Powell, Sheriff of Logan County, Colorado, do hereby grant a permit to Leon B. Propst, who is engaged in the Banking business at Sterling, Colorado, to carry a gun, in defence of his person and property." In *Comstock v. Bivens, supra,* we said: "An employee in selecting the means and adopting the method for doing his employer's work is allowed some latitude and in view of the testimony that carrying weapons was a general custom of mail carriers in this region and that acts of lawlessness had been committed in this vicinity and that the employers knew that Comstock was carrying a rifle on his trips and made no objection, we hold that it was a reasonable precaution for Comstock to take this weapon with him on his route in carrying the mails." The case of *Industrial Commission v. Pueblo Auto Co.,* 71 Colo. 424, 207 Pac. 479, concerned a claim for compensation by the widow of an automobile salesman. The latter, driving a car belonging to his employer, and while returning to town after making a sale, was attacked and killed by persons whose purpose was to obtain the car in which he was riding. In that case, in reversing the judgment of the district court vacating an award to claimant, we said: "That such travel is subject to the danger of assault for the purpose of robbery is not to be denied in view of the frequent reports of such assaults." We think that what was said in that case applies with equal effect to facts disclosed in the present proceeding. As stated in *Comstock v. Bivens, supra,* an employee has some latitude in determining the manner in which he will carry on his employer's work. We think that the commission was right in its statement that "one who is charged with conveying sums of money along public highways cannot be said to be over-zealous in his employer's service if he arms himself to protect those sums of money."

We find no error in the record and the judgment accordingly is affirmed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, and MR. JUSTICE HILLIARD, concur.