No. 15,291.

AETNA CASUALTY AND SURETY COMPANY ET AL. *v.* INDUSTRIAL COMMISSION ET AL.

(135 P. [2d] 140)

Decided March 8, 1943.

Mr. W. C. BAKER, Mr. JOHN P. BECK, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-

RENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, Mr. JOHN C. NIXON, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case, in which one of the defendants in error, Bertha Ella Hatfield, claimant, as guardian of two minor children, filed a claim for compensation with the Industrial Commission against the Aetna Casualty and Surety Company, a corporation, and Paul E. Wells, doing business as Wells Motor Company, plaintiffs in error, based upon the fatal injury of Paul C. Hatfield, her divorced husband and father of the minors, while he was allegedly on a trip for his employer, the Wells Motor Company, to Detroit, Michigan, where he was to pick up two trucks, which had been ordered by the company, and drive them back to Greeley, Colorado. The referee, the commission, and the trial court all found in favor of claimant, holding that Hatfield's "death resulted from an accident arising out of and in the course of his employment."

Plaintiffs in error contend that the evidence does not support the findings of the commission and that they are inadequate to support any award in favor of claimant. The findings of the referee are as follows:

"Upon hearing it appeared that Paul Clenton Hatfield was employed by the respondent employer as an automobile salesman. On the basis of his earnings prior to December 22, 1941, it appears that his weekly wage was maximum.

"Some time prior to December 22, 1941, Paul Clenton Hatfield and his employer arranged that Hatfield would make a trip to Detroit, Michigan, for the purpose of bringing back to Greeley, Colorado, an automobile or automobiles to be sold in the course of the respondent employer's business:

"On December 21, 1941, Hatfield left Greeley, Colorado, driving the car belonging to the employer and taking with him his father and mother and his two sons, the claimants herein. The party proceeded eastward, it appearing that their immediate destination was St. Louis, Missouri. In the early morning hours, while the father of Paul Hatfield was driving the car, an accident occurred on the road which resulted in injuries to Paul Hatfield, causing his death on December 22, 1941. He left surviving him and wholly dependent upon him for support his sons, Alvin Clenton Hatfield, born January 10, 1932, and Arland Denton Hatfield, born January 3, 1935.

"From all the evidence it does not appear that the employer prescribed any particular route of travel to be taken by the decedent but that on the contrary, details of the trip such as departure time, route, and general conduct of the trip were left by the employer to the judgment and discretion of the decedent.

"From the evidence, it appears that the decedent may have planned to continue beyond St. Louis, Missouri, to Kentucky, there, to visit with relatives in the event time allowed it. However, when the accident occurred, decedent's party had not progressed beyond the point where the decedent would have left the general route to Detroit, Michigan, for another destination. Accordingly, the Referee finds from all the evidence that the decedent's death resulted from an accident arising out of and in the course of his employment."

These findings were approved by the commission and on a petition for review they were affirmed and approved as the final award. The trial court also sustained the findings, as above noted.

We think no lengthy statement of the evidence is necessary, because sufficient proof of the relationship existing at the time of Hatfield's fatal injury appears in the testimony of Mr. Wells, his employer.

Mr. Wells was asked this question: "What were the

arrangements with Mr. Hatfield for this particular trip?" He answered, "Well, Mr. Hatfield was to go to Detroit after two trucks that were ready for delivery and were scheduled for shipment the 23rd day of December. He asked my permission to use one of my automobiles for the purpose of taking his parents and his children to a certain place in Kentucky and from there he was to go to Detroit. That was the understanding I had with Paul when he left here."

As to instructions regarding the trip given by Wells to Hatfield and the route to be taken, the following appears in the transcript of Mr. Wells' testimony:

"Q. Now, coming down rapidly to the time of his accident what was the purpose of his trip in your employ as directed by you? A. His objective was to bring back some trucks from the factory. Q. Had you given him specific written instructions to get the truck. A. I had. Q. And he carried those instructions with him? A. That is right. Q. Was any specific route necessary for him to take in order to accomplish that? A. Not necessarily. Q. He could take his own route and did do so? A. That is right. Q. He didn't ask you which way he should go and you didn't give him specific instructions how to go? A. No, I didn't. Q. Mr. Wells, Mr. Hatfield carried with him a credit card, did he not, for getting gasoline and oil? A. That is right. Q. This was found upon his person? A. Yes. Q. Is that what you gave him for that purpose? A. That is right."

Counsel for plaintiffs in error seem to be of the opinion that because Hatfield chose to travel through Kansas instead of taking a more direct northern route, he "detoured" to the route upon which he was driving for his convenience and pleasure, and that since he was killed while on the detour he was not "performing services arising out of or in the course of his employment." Such a deduction is not justified by the facts before us. The question is, Under all the circumstances, was the route chosen by Hatfield a reasonable one? The referee

and commission found that it was, and we agree. Mr. Wells further testified: "He asked my permission to use one of my automobiles for the purpose of taking his parents and his children to a certain place in Kentucky and from there he was to go to Detroit. That was the understanding I had with Paul when he left here."

It being in the middle of winter, it appears that the route through Kansas was a very reasonable one, if not the most direct, and the cases cited by counsel for plaintiffs in error, and upon which they rely, relating to detours for personal convenience or pleasure have no application. Assuming that Hatfield had intended traveling to St. Louis and from thence to Detroit—the rest of his party going on from St. Louis to Louisville, Kentucky—he still would have been performing services "in the course of his employment" at the time he was fatally injured near Wamego, Kansas, as that town is situated this side of St. Louis.

In the light of Wells' testimony, we think it a reasonable deduction that at the time Hatfield met his death he was performing services for his employer within the meaning of the applicable act. *Security State Bank v. Propst,* 99 Colo. 67, 59 P. (2d) 798. It appears that he carried on his person specific written instructions, and a Texas Company credit card for gasoline and auto supplies on the trip, which was furnished by Wells.

Again assuming that Hatfield's objective while traveling through Kansas was to spend Christmas in Kentucky, the trip to Detroit was still concurrent, and an injury sustained under such circumstances will sustain a claim for compensation. 71 C.J. 675, §420.

"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been

canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." *Marks' Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181, 183. See, also, 71 C.J., p. 676, §421, note 53 [a] in which is cited, *Barragar v. Industrial Commission of Wisconsin,* 205 Wis. 550, 238 N.W. 368, 78 A.L.R. 679.

Our Colorado decisions do not disclose a situation exactly similar to the one at hand, that is, involving such long distances. However, one of them involves a similar principle. In it we said: "Even though it was true that he was going home to supper, and even assuming that he would ordinarily be out of the course of his employment in so doing, yet in this case, for some distance, say a half a mile, on his way home, he would have ridden along the line of his own work * * * he need not necessarily be said to have ceased his work until the street car left the street upon which that work lay." *Colorado Contracting Co. v. Industrial Commission,* 74 Colo. 206, 219 Pac. 1075. So in the case at bar, we hold that although Hatfield was traveling on a road leading to St. Louis, he at the same time was on a highway leading to the place where "his work lay."

Other alleged deficiencies in the findings of the referee were not specified in the petition for review; hence we do not consider them. We make no comment on the question of hearsay testimony, other than to say that we deem it unnecessary to consider it in view of our action sustaining the award.

The judgment should be affirmed. Let that be the order.

MR. JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE JACKSON concur.