# No. 15,478.

WESTERN AUTO SUPPLY COMPANY ET AL. *v.*
WASHBURN ET AL.
(149 P. [2d] 804)

Decided June 5, 1944.

Mr. LOWELL WHITE, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, Mr. FELIX O'NEILL, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is a workmen's compensation case. Claimant is the widow of Roy V. Washburn, who, at the time of his death, was the manager of the Western Auto Supply Company's Broadway store in the city of Denver. He claimed to have suffered a hernia on November 24, 1942. The record discloses: The first report of the accident was that of the employer, dated November 30, 1942, showing that hernia had resulted by reason of Washburn's "picking up piece merchandise in stockroom;" that the date of the accident is given as November 24, 1942; that the accident was reported to the employer on that date, and as of the date of the employer's report, November 30, 1942, the employee was still at work. The form of workman's notice and claim for compensation,

stamped as having been received in the office of the secretary of the Industrial Commission December 28, 1942, contains the same information as above set forth, and shows in addition that the employee left work December 8, 1942, and had not yet returned to work. No names are filled in, in answer to interrogatory 13 on the form notice reading: "Names and addresses of witness to accident are." This form notice bears no signature. It further appears that Mr. Washburn went to the hospital December 8, 1942; was operated upon for hernia December 9th; December 14 paralysis of the greater portion of his right side developed; December 29 attorney for employer definitely denied liability and stated that treatment had been furnished employee under a mistake of fact and that liability for further treatment and compensation benefits were being contested. January 4, 1943, Mr. Washburn died of pulmonary embolism.

Subsequently, under date of January 19, 1943, Irene M. Washburn, widow of Roy V. Washburn, executed her dependent's notice and claim for compensation, and this notice is endorsed as having been received by the Industrial Commission on January 20, 1943. In this notice, which is duly signed and acknowledged, affiant states the date of the accident as November 24, 1942, the nature of the. injury caused by the accident as hernia, and the cause of death as pulmonary embolism.

At the hearing before the referee on March 19, 1943, claimant's evidence, in addition to the testimony of herself as sole heir and dependent of Roy V. Washburn, consisted of the testimony of Frank Paulson, an employee of the Western Auto Supply Company in its store at 1236 Broadway, Denver, Colorado. Paulson testified to an incident that occurred November 25, 1942 (he knows it was the 25th because it was the day before Thanksgiving), when. he and Mr. Washburn were lifting a power saw from the top of a stock of merchandise. It was crated and weighed approximately 150 pounds — the crate being about three and one-half feet long and prob-

ably two feet wide. At the time he and Mr. Washburn attempted to lift it, it was resting on top of merchandise about five feet from the floor. As they were moving the saw, Mr. Washburn's foot slipped. Paulson testified that after they had put the saw on the floor, Mr. Washburn looked "white as a sheet," and in response to Paulson's question if he was sick said, "No, I hurt myself." Paulson asked if he should arrange for him (Washburn) to go home; that Washburn replied, "No, he would stick it out;" but he did not do any work, just sat at a desk. Paulson further testified that shortly thereafter he was transferred to the warehouse; however, he knew that Mr. Washburn continued at the store two or three days after the accident, but that he did not do any work.

In the course of the hearing before the referee, employer offered in evidence a statement, purporting to have been signed by decedent, describing the details of the accident giving rise to the hernia. This statement was as follows:

"I am age 44, married and residing with my wife, no children and no dependents other than my wife, and have been employed by Western Auto Supply Co. for a period of twenty years. At present I am manager of the Denver store at 1236 Broadway, and I have been so engaged for the past one year. Prior to that time, and for a period of about 14 years I was employed by the Company at Twin Falls, Idaho.

"The history of my hernia trouble begins about one and one-half years ago. * * * About 1½ years ago, while pushing a refrigerator at the Twin Falls store, I felt a pain in my left abdomen. * * * He [the doctor] gave me treatment by shots during which time I wore a truss. After the treatment I, discarded the truss and have not had to wear it since. I have had no trouble whatsoever until the present time with either my right or left side.

"On Tuesday November 24, 1942, while working at the Denver store, I went into the back storeroom to get out a power tool machine to take the same out into the

display room as part of the stock. This machine was on a low shelf. I bent over to get it, and started to pull it forward and at the same time lifting on it. While I was doing this, it caught on another crate (the machine being still in its original crate). As it did so I felt a pain in my abdomen on the right side. The crated machine weighed between 90 and 110 pounds. The pain in my abdomen lasted all the rest of the day, and the following days would reappear when I tried to lift anything, when I coughed or when I was on my feet too long. The left side of my abdomen has also ached from the time the right side 1st started also, but it was not as acute at first as the right side. However it has ached dully ever since. On Friday, Nov. 27, 1942 I went to see my family physician, Dr. H. R. McKeen, Sr., Republic Bldg., Denver, who advised me that I had a hernia on both the right and left side. He recommended operation as soon as possible to repair this condition. I have not seen any other doctor except Dr. McKeen. The reason I went to him, and not to a doctor appointed by the insurance company is because he was our family doctor.

"At the time of my prior hernia in Idaho, I did not receive compensation nor medical benefits, because by the time I found out what the trouble was it was too late to file a claim for benefits.

"I attribute my hernia at this time solely to my efforts to lift out the machine and the fact that it became caught on another crate. During the intervening year between my present trouble and the completion of my treatment by Dr. Coughlin, I have had no trouble what-so-ever.

"The foregoing page and a half is true and correct to the best of my knowledge, and I have read and signed each page at Denver, Colorado on Nov. 30, 1942.

"R. V. Washburn.

"P.S. There were no witnesses to this incident, as I was alone at the time and was not being aided by anyone else. R.V.W."

Employer also offered to prove by William K. Ris that

deceased had made the same statements orally to him, Ris. The referee of the commission refused to admit in evidence both the testimony of Ris and the written statement of decedent, and found and ordered inter alia as follows:

"Roy V. Washburn was employed by the above named respondent employer at a maximum average weekly wage. He died on January 4, 1943 of a pulmonary embolism, which was the direct result of an operation performed on this party on December 9, 1942. The question involved herein is whether or not Roy V. Washburn was injured in an accident arising out of and in the course of his employment, sustaining a hernia which necessitated the operation of December 9, 1942. There is some conflict in the evidence as to whether or not this employee's accident took place on November 24, 1942 or November 25, 1942.

"The Referee finds from the evidence that Roy V. Washburn was injured in an accident arising out of and in the course of his employment on November 25, 1942. On this date, he was lifting a heavy crate and slipped. The injury caused a hernia. The Referee finds that the appearance of this hernia was accompanied by pain and was immediately preceded by an accidental strain suffered in the course of Mr. Washburn's employment. The respondents have offered a statement signed by Mr. Washburn, marked Exhibit 1, for the purpose of impeaching the testimony of the witness, Frank Paulson. The Referee finds that this exhibit should not be received for two reasons:

"1. Admissions of decedent are not admissible against his dependents. In the case of *Jacksonville Electric Co. v. Sloan,* 42 So. 516 (Fla.), there was a suit brought by the widow to recover damages for the death of her husband. Declarations and admissions of the deceased husband, as to his physical condition on the morning before the afternoon when he was killed, were offered. The Court states at page 523: 'We are inclined to think, from

such an examination of the authorities as we have been able to make, that such declarations are admissions and are inadmissible in an action brought by the widow of the deceased, and are to be regarded as other hearsay evidence, unless they are made under such circumstances as would be a part of the res gestae.'

"In the case of *Eldredge* [*Eldridge*] *v. Barton,* 128 [122] N.E. 272 (Mass.), there was an action for wrongful death and testimony was offered that after the accident deceased said, 'It is my fault; I am to blame.' The Court stated at page 573 [273]: 'In the present action these next of kin are [not] in privity with and [or] claiming under the intestate; and hence the admission made by him does not bind them, nor bind the plaintiff administrator so far as he is suing for their benefits [benefit].'

"In the case of *Erie v. Brady,* 17 Atl. 884 (Penn.), there was an action to recover damages for an injury to plaintiff's seven year old son, caused by his slipping and his stepping into a hole. The injury resulted in the boy's death. Declarations of the boy, made by the boy after the accident, were offered. The Court stated at page 885: 'There is no merit in the second specification, which alleges error in excluding the boy's declarations, made some time after the accident. They were not part of the res gestae, and, if [as] the action was by the father for the loss of services, we do not see how his rights can be affected by the declarations of the son. It is true, that plaintiff claims by reason of the injury to the boy, but his legal rights are independent of that fact, and can not be defeated by anything the boy [son] can say or do.'

"2. The statement offered by respondents does not contain admissions but rather merely contains statements which might be contrary to statements made by your witness. The statements are clearly hearsay and are not admissible for the purpose of impeaching this witness. Even if this statement should be admitted, the Referee finds that the result would be the same since this merely raises a discrepancy as to the date of the

accident. The Referee specifically finds that Mr. Washburn did not sustain two accidents but that there is merely a discrepancy as to whether this accident occurred on November 24, 1942 or November 25, 1942. The Referee specifically finds that Mr. Washburn's accident was sustained on November 25, 1942. He left work on account of his injury on December 8, 1942. There is accrued and unpaid compensation covering the period from December 19, 1942 to January 4, 1943 in the sum of $32.00.

"Decedent left surviving and wholly dependent upon him for support his widow, Irene M. Washburn. Funeral expenses in the sum of $584.14 have been incurred and the same were paid by the widow. Decedent's average weekly wages were $46.15.

"It is, therefore, ordered: That respondents' offer of Exhibit 1, be and the same is hereby refused.

"It is further ordered: That respondents pay claimant the sum of $32.00, for and on account of accrued and unpaid compensation.

"It is further ordered: That respondents pay compensation to Irene M. Washburn, dependent widow herein, at the rate of $60.76 per month, beginning January 4, 1943, first payment due February 4, 1943 and continuing monthly thereafter until the full sum of $4,343.00 shall have been paid or until the further Order of the Commission herein.

"It is further ordered: That the respondents pay for the necessary medical, surgical and hospital expense incurred and not to exceed $500.00.

"It is further ordered: That the respondents pay the sum of $125.00 to Irene Washburn as reimbursement for funeral expenses paid by her."

After the commission had approved and affirmed the order of the referee, the employer, in a suit in the district court in the City and County of Denver, unsuccessfully sought to have set aside the order of the

commission, and brings the cause here by writ of error seeking a reversal of the judgment.

█ Counsel for the employer contends that it was error to exclude the written statement of decedent, and also evidence of his conversation with Ris, on the ground that both were hearsay; that because of the Colorado statute, section 359, chapter 97, '35 C.S.A., requiring certainty of proof in hernia cases, the statement of decedent that no one was present when he incurred the injury was an admission against interest, and therefore was admissible under one of the well-known exceptions to the rule against the use of hearsay evidence. Counsel for defendants in error, answering this contention, rely upon section 384, chapter 97, '35 C.S.A., which reads in part: "Upon the trial of any such action, the court shall disregard any irregularity or error of the Commission unless it be made affirmatively to appear that the party complaining was damaged thereby." They argue that the commission is not bound by the strict rules of evidence, citing *Zook v. Industrial Commission,* 75 Colo. 41, 223 Pac. 751; *Comstock v. Bivens,* 78 Colo. 107, 239 Pac. 869. But in *Comstock v. Bivens, supra,* the Industrial Commission admitted hearsay testimony, and we held that we were forbidden by statute to pass upon objections to the admission of evidence. The statute requiring us to disregard certain errors in the admission of evidence does not, however, compel us to ignore serious errors in its exclusion. We do not believe it was the intention of the legislature, in directing the courts to disregard certain errors or irregularities of the commission, to allow the latter to put into effect rules limiting the introduction of evidence, which our courts are without authority to adopt. By the exclusion of Exhibit 1 and Ris's testimony in the instant case, we are of the opinion "that the party complaining was damaged thereby."

█ In this jurisdiction, in actions for wrongful death, admissions against interest made by the decedent are

admissible in evidence. *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390, 21 Pac. 148; *Dwinelle v. Union Pacific R. R. Co.,* 104 Colo. 545, 99 P. (2d) 741. Counsel for claimant argues that there is a difference between actions for death by wrongful act and proceedings to obtain compensation under the workmen's act. At the same time, they suggest that note should be made of the three cases cited by the referee in his order. None of these cases arises under a workmen's compensation act, and all are actions brought for death by wrongful act under the respective statute in each state. In the Pennsylvania case, 126 Pa. St. 622, 17 Atl. 884 (erroneously cited by the commission as Erie v. Brady—the proper title being *City of Bradford v. Downs*), an alleged statement by a young boy as to the cause of his injuries, in an action brought by his surviving parent, was refused admission in evidence. In the Florida case, *Jacksonville Electric Co. v. Sloan,* 52 Fla. 257, 42 So. 516, an alleged statement of an employee, who was electrocuted by a sudden turning on of an electric current while working on the wires, that he felt the heat and was not feeling strong, was denied admission. Both cases were decided in 1889, and the respective statements were ruled out as not part of the res gestae. In *Eldridge v. Barton,* 232 Mass. 183, 122 N.E. 272, the Supreme Court reversed the trial court for not receiving in evidence the admission of decedent against interest.

 It is our opinion that the statement of Mr. Washburn in the instant case should have been admitted in evidence as an admission against interest. To quote *Eldridge v. Barton, supra,* "We cannot say that the error did not injuriously affect the substantial rights of the defendant." With the statement of the decedent barred, the referee and the trial court had nothing before them but the uncontroverted testimony of Paulson relating to an accident on November 25, 1942.

 But it is argued that, even if the written statement of decedent is admitted, the finding of the com-

mission should stand because it found specifically, that, "Even if this statement should be admitted, the Referee finds that the result would be the same since this merely raises a discrepancy as to the date of the accident. The referee specifically finds that Mr. Washburn did not sustain two accidents, but that there is merely a discrepancy as to whether this accident occurred on November 24, 1942 or November 25, 1942." The record does not sustain this statement. There is a clear discrepancy, not only in respect to the date of the accident, namely between the 24th (as consistently stated by decedent and, incidently, also by claimant in her first statement of claim to the commission) and the 25th as testified to by claimant's witness, Paulson, but there is also a discrepancy as to the nature of the accident: whether the decedent was reaching up to lift something down, or leaning over to lift something up; and the third and even more important conflict, as to whether or not there was a witness to the accident. This is therefore not the usual case, where the commission, out of conflicting testimony, makes a finding based upon competent evidence. In such cases courts will not disturb the award of the commission. But here the commission has made a finding based upon the premise that, even with decedent's written statement in the record, there was no conflicting testimony, except as to the date of the accident, when in fact the record shows that there was conflict in the two additional matters to which we have referred.

█ The Industrial Commission—and not the courts—is the fact finding body in cases of this character. We merely hold that there was error as a matter of law in the exclusion of the proffered statement of Washburn and the testimony of Ris. There also was error, as appears from the record, in holding that (if there was only one accident) the only discrepancy in the evidence was in the matter of the date of its occurrence.

█ It has been argued, without citation of authority, that the employer by furnishing partial hospitalization

is now barred from contesting this award based on an industrial accident. But the accident upon which the employer apparently allowed hospitalization was that described in Washburn's written statement and Ris's oral testimony, both of which were excluded by the commission. Until that evidence is admitted and an award entered based on that accident, it would seem at least premature to argue that employer has admitted liability.

█ It also is to be noted that claimant, during the hearing, expressly waived any claim she might have had to the amounts that were due to her husband prior to his death on the theory that there were two accidents. On the theory adopted by the commission, that there was only one accident, it would appear that this item should not have been included in an award.

The judgment is reversed and the cause remanded, with directions to the trial court to return the files to the commission with instructions to set aside its present award, admit the statement of Roy V. Washburn in evidence, take additional testimony if deemed necessary, and to make new findings and orders not inconsistent with the views expressed in this opinion.

MR. JUSTICE KNOUS and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE GOUDY not participating.

MR. JUSTICE KNOUS dissenting.

While I agree with the conclusion of the court's opinion with respect to the admissibility of the evidence considered, I cannot agree to the reversal of the judgment, because of my conviction that by furnishing hospitalization and medical treatment to deceased, in the first instance, the insurance carrier is now precluded legally from questioning that the original injury arose from an industrial accident.

MR. JUSTICE HILLIARD concurs in this opinion.