SOUTHLAND CORPORATION AND TRAVELERS INSURANCE COMPANY *v.* GERTA L. HESTER ET AL

5-6153                                        490 S.W. 2d 132

Opinion delivered February 12, 1973

*Terral, Rawlings & Matthews,* for appellants.

*Rush, Asher & Galloway,* for appellees.

GEORGE ROSE SMITH, Justice. This is a claim for death benefits under the workmen's compensation law. The pivotal question is whether the employee's death, assuming it to have been accidental rather than self-inflicted, arose "out of" his employment. The commission's two-to-one decision allowing the claim was affirmed by the circuit court.

The facts, stated most favorably to the appellees, are these: Buford Hester, the decedent, was employed by Southland Corporation, which was a distributor of milk and milk products. The record does not tell us much about Hester's duties as an employee, except that for an unspecified period of time before his death he had been

traveling with newly employed route salesmen, showing them the territory that they were to cover.

On April 12, 1969, Hester was to travel over a new route with Bland Williamson. The two men agreed to meet at Southland's office at 7:00 a.m. When Williamson reached the office he discovered that Hester was dead. The decedent was sitting in a chair in front of his desk. He had been shot by his own .22 caliber rifle. The butt of the rifle was propped against a surface-mounted electrical outlet on the floor. The barrel of the weapon was pointed toward the decedent's chest, in the vicinity of his heart. Powder burns indicated that the gun had been pressed against Hester's chest when the fatal shot was fired.

Almost all the claimants' witnesses testified only to facts rebutting the inference of suicide. To that end it was convincingly shown that Hester had no known motive for taking his own life and that he was not familiar with firearms. We do not set out that testimony, because we do not rest our decision upon the view that Hester's death was not accidental. Instead, we are concerned with the existence of a causal connection between Hester's employment and his death. Upon that issue the main testimony is that of Hester's widow, whose evidence is to this effect:

Hester owned the rifle. About four months before his death he asked his wife where the gun was. Mrs. Hester told him that she had put it in a bedroom closet that was used for storage. "I asked him why, and he said that, well, there had been quite a few rough-looking youths coming in and applying for jobs, and he said somehow or another I have a feeling that they are not looking for jobs, because their eyes roves around over the office area, and there would be at times money that Miss Holland would have money from the routemen laid out there, and he was quite concerned about that, and he had warned them." Mrs. Hester had no idea when her husband took the rifle to the Southland office. No one testified to having seen the weapon at the office before Hester's death. A filling station attendant in the neighborhood testified that he saw Hester enter the Southland building on the morning of his death and that Hester was not then carry-

ing a rifle. There is no proof that Hester's duties as a Southland employee involved any responsibility for the handling or safekeeping of money belonging to the company. No funds were kept at the office overnight, but routemen did bring in collections during the day.

The applicable principles of law are fairly well settled. An accident arises "out of" the employment when there is a causal connection between the two; that is, when the accident results from a risk reasonably incident to the employment. *Owens* v. *Southeast Ark. Transp. Co.,* 216 Ark. 950, 228 S.W. 2d 646 (1950). With respect to injuries resulting from the accidental discharge of firearms, Schneider fairly summarizes the cases:

> "Injuries to workmen from the accidental discharge of guns, not handled or present in connection with or furtherance of the employer's business, cannot be said to be compensable accidents. They do not arise out of though they may occur in the course of the employment. But where the presence of a gun is reasonably necessary to insure the safe conduct of the employer's business, or is present or handled for the purpose of protecting the employer's property, or in the furtherance of the employer's interests, and the employer has knowledge of its presence, or acquiesces in its presence, either affirmatively or by his inaction, injuries resulting from the accidental discharge of the weapon, while the workman is in the course of his employment, may be said to be compensable as arising out of the conditions surrounding the employment and risk inherent to the nature thereof." Schneider, Workmens Compensation, § 1567 (a) (1948).

Compensation is to be denied when the presence of the firearm had no connection with the employer's business or the employee's duties. *Bull* v. *Wayco Oil Corp.,* 250 Mich. 51, 229 N. W. 597 (1930); *Highway Oil Co.* v. *State ex rel. Bricker,* 130 Ohio St. 175, 198 N.E. 276 (1935); *Beamer* v. *Stanley Co. of America,* 295 Pa. 545, 145 A. 675 (1929); *Aetna Life Ins. Co* v. *Burnett,* 283 S.W. 783 (Tex. Civ. App., 1926). On the other hand, when there was such a connection, and when the employer expressly or impliedly consented to the presence of the weapon, compensation is recoverable. *Nurmi* v. *Indus-*

*trial Acc. Commn. of Calif.,* 137 Cal. App. 221, 30 P. 2d 529 (1934); *Security State Bank of Sterling* v. *Propst,* 99 Colo. 67, 59 P. 2d 798 (1936); *Holland* v. *Continental Cas. Co.,* 155 So. 63 (La. App., 1934); *Gallaher* v. *United States F. & G. Co.,* 77 S.W. 2d 312 (Tex. Civ. App., 1934). In the somewhat analogous case of an injury resulting from horseplay upon the employer's premises, we have noted that a pertinent fact is whether the employer should have known about the horseplay, so that it could have been stopped. *Southern Cotton Oil Division* v. *Childress,* 237 Ark. 909, 377 S.W. 2d 167 (1964).

In the case at bar we cannot conscientiously say that there is any substantial evidence to support the conclusion that Hester's accidental death was causally connected with his employment, within the controlling rules of law. It is not shown that he was in any way responsible for the safekeeping of Southland's money or property. It is not shown that Southland consented, expressly or impliedly, to the presence of the rifle upon its premises, much less to its control by a man unfamiliar with the use of firearms. To say the least, Hester voluntarily created a dangerous situation having no direct connection with his duties as an employee and bearing no express or implied approval on the part of his employer. Inasmuch as Hester's death cannot be said to have been proximately connected with his work, even under the most liberal view of the evidence, the claim for death benefits must be denied.

Reversed and dismissed.