MAX MELNICK, PETITIONER, v. IDEAL CONTAINER CORPORATION, RESPONDENT.

JOSEPH GUIDA, GUARDIAN FOR LUCA SALEMI AND ANNETTE SALEMI, PETITIONER, v. IDEAL CONTAINER CORPORATION, RESPONDENT.

Submitted May 2, 1944—Decided May 22, 1944.

Before Justices CASE, BODINE and PORTER.

For Max Melnick and Joseph Guida, *Cox & Walburg* (*Arthur F. Mead*).

For the respondent, *Raymond L. Cunneen.*

BODINE, J. The petitioners had judgments in the Workmen's Compensation Bureau. These judgments were reversed in the Court of Common Pleas. *Certiorari* was denied by a single justice to whom application for the writ was made. The matters are now before us on application for such a writ which must also be denied.

The petitioner Max Melnick was production manager for the defendant company. Thomas Salemi, for whose minor children a petition was also filed, was killed on the morning of December 7th, 1940, on his way to work being driven by Melnick in the latter's wife's automobile. He was also employed at the respondent's plant.

The claim is made that Melnick was driving the car and carrying Salemi to the plant as part of his employment. The claim is not sustained by the weight of evidence. Even

though Melnick occasionally procured parts for plant machinery in his wife's car, the proofs are clear that on the day in question and at the time of his injury he was using the car for his own purposes in order to get to work. That Salemi occasionally rode with him, as he was doing on the day in question, seems to have been because of Melnick's courtesy and concern for Salemi's convenience. The employer paid none of the tube fares or the cost of gasoline.

The testimony that one of the employer's officers requested the transportation is not credible. That he knew that the men sometimes arrived together signified nothing. Workers have been requested by government agencies to share transportation when possible, and long before such request was made it was common practice.

Melnick is not to be believed when he testified that it was part of his duty to transport employees to and from work. The proofs show that many employees lived in Brooklyn and used train and tube. Melnick sometimes took his old friend Salemi to work, and perhaps others, but the few he brought were but a small proportion of the total of the employees. The claims were not filed until more than a year and a half after the accident. Melnick's testimony at the hearing was diametrically opposed to sworn statements he made shortly after the occurrence. His testimony indicates that he desired, after his discharge, to fix a liability upon his former employer which, we think, had no foundation in fact.

The judgment of the Court of Common Pleas will be affirmed and the application for the writ will be denied, with costs.