227 P.2d 365

**WILSON et al. v. ROWAN DRILLING CO. et al.**

No. 5244.

Supreme Court of New Mexico.

Sept. 16, 1950.

Rehearing Denied Dec. 28, 1950.

Second Rehearing Denied Feb. 19, 1951.

John R. Brand, Hobbs, Seth & Montgomery, Santa Fe, Simms, Modrall, Seymour & Simms, Albuquerque, for appellants.

G. T. Hanners, Robert W. Ward, Hanners & Ward, Lovington, for appellees.

Marion S. Church, Dallas, Tex., Tilley, Hyder & Law, Fort Worth, Tex., amici curiae.

BRICE, Chief Justice.

The above actions, for compensation under the Workmen's Compensation Act, 1941 Comp. § 57-901 et seq., were brought separately by the widow and minor son respectively, of an employee of the defendant Rowan Drilling Company and its surety the United States Fidelity & Guaranty Company. They were consolidated and tried as one action with one judgment. from which this appeal has been prosecuted.

In this opinion reference will be made to the parties as follows: Claimant Mrs. Farley Wilson as "Mrs. Wilson"; claimant Billy Roy Wilson as "Billy Wilson"; the defendant Rowan Drilling Company as "defendant"; and defendant United States Fidelity & Guaranty Company as "the surety".

Substantially all of the facts were stipulated, and upon these stipulated facts the court made its decision, in substance as follows:

On May 18, 1947, Roy Wilson (the deceased) was employed by defendant as a

well driller in charge of a drilling crew composed of himself and four others, and at that time he, with his crew, was engaged in the drilling of an oil and gas well in Lea County, New Mexico, for defendant. Deceased's work was within the purview of the Workmen's Compensation Act and the defendant surety company was defendant's surety.

Because of the lack of housing facilities, Roy Wilson and the members of his crew resided in the city of Hobbs, about 30 miles from their place of work. Wilson and his crew worked the afternoon shift, or tower, from four o'clock P. M. until midnight.

"3. That the compensation of Roy Wilson was based upon an hourly pay rate of $1.80 for his eight hour shift, as contrasted to the $1.20 to $1.25 per hour paid to the other crew members and that, at the time of the fatal accident, Roy Wilson's average weekly earnings were $92.50 per week.

"4. That it was the duty and responsibility of Roy Wilson, under his contract of employment as the driller in charge of such crew, to see that his crew was fully staffed and to see that such crew arrived at the drill site before four o'clock P. M. and remained there throughout their eight hour work period; and that it was the duty and responsibility of Roy Wilson, under his contract of employment as the driller in charge of such crew, to either transport himself and the members of his crew to and from the drill site or to arrange for their transportation by some other member of his crew."

Roy Wilson had the authority and responsibility under his contract of employment to hire and fire the members of his crew. Under this authority he fired three members of the crew on May 16th and employed two others on May 17th, and on the morning of May 18th he employed another. The last mentioned employee (Tidwell) had no means of transportation and was advised by Wilson that he would pick him up and take him to the drilling site that afternoon. Wilson arranged with the workman Compton to furnish his car for this transportation, and on the afternoon of May 18, 1947, while Wilson and the four members of his crew were going from Hobbs to the drilling site over the usual travelled way in the Compton car, they collided with another vehicle which resulted in the deaths of Wilson and three of the members of his crew.

"8. That Roy Wilson had begun the performance of the duties of his employment when he hired the new man in the City of Hobbs on the morning of the fatal day, that he was then acting within the scope of his employment and in the furtherance of the business of his employer; and that he was engaged in the performance of the duties of his employment and in the furtherance of the business of his employer at the time of the fatal accident."

"9. That the employer did not pay any mileage or other transportation allowance as such, but from the wage scale paid the deceased driller at the time of his death, said wage rate contained reimbursement to the driller for extra work performed by him in addition to his duties as driller at the site of the well; that upon an hourly basis, the compensation of Roy Wilson and the other members of his crew commenced when they arrived at the drill site at four o'clock in the afternoon and ended when they completed the midnight tower; that they were not paid any compensation for the time consumed in going to and from their homes in Hobbs to the drill site except for the additional compensation in this paragraph above mentioned; and although the employer did not dictate, supervise or in any way control the arrangements made by Roy Wilson and the members of his crew for their transportation to and from the drill site, the employer had knowledge of and acquiesced in the arrangements which had been made by Roy Wilson for the daily transportation of himself and his crew and the employer looked to Roy Wilson as part of his duties and responsibilities of his employment to see to it that a full crew arrived at the drill site each tower in time to start work at four o'clock."

The collision that caused the death of Wilson was not due to any negligence of the defendant.

"11. That Farley Wilson, claimant in Cause No. 7031, is the surviving widow of the said Roy Wilson; that she was living with him at the time of his death and was actually dependent on him for support; and that no children had been born of their marriage."

"12. That Billy Roy Wilson, claimant in Cause No. 7030, is the son of the said Roy Wilson by a former marriage; that he was approximately 13 years of age at the time of the death of the said Roy Wilson and was actually dependent upon him for support; that said minor dependent child resides with his mother, Mrs. W. B. Thompson, who appears in said cause as his next friend and who was formerly the wife of the said Roy Wilson."

Funeral expenses in the amount of $150 and attorney's fees in the amount of $700 were allowed, to which no objection has been made.

Upon these facts the trial court concluded that Roy Wilson's death was accidental and arose out of and in the course of his employment; and that the claimants were entitled to workmen's compensation as provided by law. That the two claimants were entitled to only the combined award of compensation that would have been made to a surviving widow who was the mother of the dependent child, and not the separate compensation provided for in the statute in the cases where there was either

no widow but a dependent child left, or where there was a dependent child and no widow left.

The court divided the compensation as follows: "(a) To Farley Wilson, dependent widow and claimant in Cause No. 7031, and to Billy Roy Wilson, dependent child and claimant in Cause No. 7030, collectively, 45 per centum of the average weekly earnings, but not to exceed $18.00 per week, for a period of 300 weeks, commencing May 18, 1947, and continuing, subject to the limitations of the Workmen's Compensation Act, for such period of 300 weeks; and that such compensation should be apportioned between the said Farley Wilson, widow, and Billy Roy Wilson, child, in the following manner: 40/65ths of such amount to Farley Wilson and 25/65ths of such amount to Billy Roy Wilson; and that Mrs. W. B. Thompson, mother of such child, should be appointed by the Court to receive the same for the benefit of the said Billy Roy Wilson."

The defendant and the surety admit that under decisions of this court, the judgment of the district court is correct if the trial court's findings of fact numbers 4, 8 and 9 are supported by substantial evidence. See McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867; Barrington v. Johnn Drilling Co., 51 N.M. 172, 181 P.2d 166.

Findings of fact numbers 4, 8 and 9 are attacked upon the ground, as it is asserted, that they (or a vital portion of each) are not supported by substantial evidence. We have copied these findings in full for convenience.

The following part of finding No. 4 is attacked: "* * * and that it was the duty and responsibility of Roy Wilson, under *his contract of employment* as the driller in charge of such crew, to either transport himself and the members of his crew to and from the drill site *or to arrange for their transportation* by some other members of the crew." (Appellants' emphasis.)

The court based finding No. 4 on the following stipulation of fact in the record: "That it was his duty, the duty and responsibility of the man Wilson as the driller in charge of the crew to keep his crew fully staffed and to see that his crew arrived at the drill site at approximately 4:00. o'clock in the afternoon and remained there through their eight hour working period; that it was also his duty to either furnish his own car or to see that some other member of the drilling crew furnished a car pursuant to their arrangement, car pooling arrangement, to transport the entire crew to the drill site; that such practice is customary in the oil fields of Lea County, New Mexico, for the driller in charge of the crew to be responsible for maintaining a full crew and seeing that it arrives at the drill site; that this driller was paid approx-

imately $1.80 an hour as compared to $1.20 or $1.25 an hour paid the other members of his crew—that is, approximately 20 per cent more."

The only difference between the finding and the stipulation seems to be the added inference that the duty and responsibility of seeing that the crew was fully staffed and that they arrived at the drill site before four o'clock P. M. and remained there throughout their eight hour work period, arose out of his contract of employment. Now if the duty and responsibility of Wilson to do these things did not arise out of his employment contract, then from whence came it? The inference is not only reasonable, but it necessarily follows from the facts stipulated. We can conceive of no other source for the duty and responsibility imposed upon deceased other than his contract of employment. From whence came his authority to "hire and fire" the members of his crew? From his contract of employment, of course. The same inference applies to the duty of seeing that his crew was fully staffed and arrived on time and remained to do their work. To perform these duties, he had to secure transportation and take his crew to the drilling site, unless one or more had their own transportation. Even in that case, he was duty bound to see that they arrived on time and remained for their work.

In other words, his employment contract provided that he should employ for the de-fendant at its expense, a drilling crew, of whom he was the head; that he should have the crew present at a specified time to work on an eight hour shift. While performing any of these duties, he was acting in the course of his employment. The suggestion that "no part of the transportation was of any concern to the employer" is obviously not correct. Without the transportation, the crew could not go to the drilling site, and without a crew the well could not be drilled. Finding No. 4 is supported by substantial evidence.

It is asserted that the following portion of finding No. 8 is not supported by substantial evidence: "* * * and that he was engaged in the performance of the duties of his employment and in the furtherance of the business of his employer at the time of the fatal accident."

This contention is settled adversely to defendant's contention by our conclusion regarding finding of fact No. 4.

The following portion of finding No. 9, it is asserted, is without supporting evidence:

"(a) That the employer did not pay any mileage or other transportation allowance as such, but from the wage scale paid the deceased driller at the time of his death, said wage rate contained reimbursement to the driller for extra work performed by him in addition to his duties as driller at the site of the well; that upon an hourly

basis, the compensation of Roy Wilson and the other members of his crew commenced when they arrived at the drill site at four o'clock in the afternoon and ended when they completed the midnight tower; they were not paid any compensation for the time consumed in going to and from their homes in Hobbs to the drill site except for the additional compensation in this paragraph above mentioned * * *.

"(b) * * * and although the employer did not dictate, supervise or in any way control the arrangements made by Roy Wilson and the members of his crew, for their transportation to and from the drill site, the employer had knowledge of and acquiesced in the arrangements which had been made by Roy Wilson for the daily transportation of himself and his crew and the employer looked to Roy Wilson as part of his duties and responsibilities of his employment to see to it that a full crew arrived at the drill site each tower in time to start working at four o'clock."

As we view it, there were certain duties and responsibilities attached to the position of head driller. As head driller, he was paid a higher hourly wage than was paid to the other crew members. His compensation, it is true, was measured by the hours drilling was in progress, but this does not necessarily imply that Wilson was not paid for the performance of the other duties which as head driller, it was stipulated by the parties, he was required to perform. If he had not been employed at higher wages it cannot be conceived that he would have performed these extra services without pay; nor can we conceive that the parties to his employment did not intend that the wages paid him, though measured by drilling hours, were in part payment for the performance of those extra duties regarding the employment of crews, and transporting them, or seeing to it that they were transported, to the drilling site. There can be no other reasonable inference.

When parties stipulate the facts of a case they are not only bound by them, but by all reasonable inferences the district court may draw from them. Indeed, the stipulated facts alone support the judgment. The findings of the trial court that Wilson's employment contract included the duties and responsibilities of hiring and firing his crew, and having them at the drill site at four o'clock each afternoon, were based on more than inferences. They were stipulated facts; for these duties and responsibilities could only arise out of a contract. The facts surrounding the accidental death of Wilson and other members of his crew, are not in the least complicated. Aside from the findings of the court, they are stipulated, substantially as follows:

Wilson, acting under authority from defendant company, fired three members of his crew. These he had to replace. He

hired two men on the 17th, and on the morning of the 18th he hired a third at Hobbs, who agreed to commence work at four o'clock that afternoon. Wilson arranged with Compton, a member of the drilling crew, to furnish a car for transporting the crew to the drilling site on that day. The third crew member employed by Wilson did not have transportation and did not know the location of the drilling site. Wilson informed him that he, Wilson, would pick him up at three o'clock that afternoon and take him to the drill site, so that he could start work at four o'clock. Pursuant to this arrangement, Wilson got in Compton's car (theretofore arranged for by him), and they drove around and picked up the crew members at designated places, including the new man, Tidwell, and started to the drill site. On the way Wilson and three members of his crew were killed in a collision accident.

It was Wilson's duty and responsibility to have himself and four members of his crew at the drill site by four o'clock. In performing this duty he arranged with Compton to furnish his car, then gathered up his crew and started on his way to the drill site. From the time he got in Compton's car until he would have arrived at the drill site had he not been killed, he was acting in the course of his employment, in that he was seeing to it that the crew would be on hand at four o'clock to begin work.

■ ■ It is a general rule, and so provided by statute in this state, that an employe is not in the course of his employment while going to and returning from his work. But there are many exceptions to the rule.

We held in McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867, 870, that an employe who was paid a day's wages while en route in his own automobile from Albuquerque to Roswell to work at Roswell, was in the course of his employment at the time he was killed while en route. We stated the rule to be: "An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in *doing something incidental thereto.*"

We stated:

"It is undisputed that the deceased was in the employ of the appellant Dorlac at and before the time he was directed to proceed to Roswell, New Mexico, to take charge of a plastering job that appellant Dorlac had under contract. The deceased received his regular wages on the day of the accident, and was to receive pay as a foreman the following day if he arrived

at Roswell in time to perform a day's work. * * *

"There are exceptions to this general rule as where the employee's duties require him to travel from one job to another. We think the case at bar comes within the exception to the general rule, and that the deceased was discharging a duty contemplated by the terms of his employment in going from Albuquerque, New Mexico, to Roswell, New Mexico, and that the injuries sustained by him were in the course of his employment."

This case is not an exact one, but it holds that one may be away from his usual employment, en route to it, in his own automobile, and still in the course of his employment.

In Rafferty v. Dairymen's League Co-op. Ass'n (Work.Comp.Bur.N.J.) 200 A. 493, 496, 16 N.J.Misc. 363, four exceptions are stated, two of which are in point here. They are:

"An employe, authorized or required to use an automobile by his employer in the fulfilling of his contract of service, is still within the course of his employment while driving from the point of last call to his home where the car is garaged. * * *

"Necessary travel while on special duty after regular working hours. In his ordinary work, the employe knows that he has to be at the proper place at a specified time to begin his services and continue them until a set time. Prior to the time set for beginning the service and after the services are ended for the day, the employe's time is his own, and he may dispose of it as he pleases. But if, while so off duty from his regular employment, he is called to do an errand or sent on a mission by the employer, the courts which have spoken on the subject hold it is a special service begun the moment the employe leaves his home, or the place where the call comes to him, and ended only with his return. * * *"

Olson Drilling Co. v. Industrial Commission, 386 Ill. 402, 54 N.E.2d 452, 454, is exactly in point. The facts are substantially as follows: Wolf was a well driller in charge of a drilling rig. His tower began at midnight and continued to eight A. M. He was head driller and responsible for what happened at the drilling site. He drove to and from his work each day in his own car, or his son's. He was paid only for work at the rig. One of his duties was to keep a report of the work and to deliver these reports to the office of his employer at Olney on his way home. In delivering the reports "he traveled the same route as he traversed in returning from the well to his home until he reached Olney and passed a shoe factory." From there he had to take a different route home. After completing his eight hour shift, he started home in his son's car, and before

he reached Olney and while on his usual route home, he was accidentally injured in a collision with another car. He received no extra compensation for travel, car expense, or delivering the report. The court said:

"The general rule is that an employment does not begin until the employee reaches the place where he is to work and does not continue after he has left the place of his employment. * * * This rule, however, is not applicable where the duties of the employee necessarily take him away from the premises of the employer. * * Under such circumstances the employer may still be liable if the employee is injured and the injury arises out of and in the course of his employment. * * * Whether an employee who is on his way to or from his place of employment is in the line of his employment depends upon the circumstances of each case and is largely a question of fact. * * * .

"Wolf was employed to take the reports to the office of his employer in Olney and for this purpose it was necessary to use an automobile. If the work of the employee creates the necessity for travel, he is in the course of his employment. Persons using the highway are subjected to certain traffic risks and one of them is the danger of collision. The perils of modern-day travel upon the highways are well known. Risk of accident is an ever-present menace. When it is necessitated by the employment the risks incidental thereto become risks of the employment and remain so as long as the employee is acting in the course of his employer's business. * * *

"In the instant case Wolf was using an automobile as a necessary adjunct to his employer's business and was performing services growing out of and incidental to his employment, and the injuries did in consequence arise out of and in the course of his employment."

In the present case it was Wilson's duty to see that his crew was at the drill site by four P.M. It was known to his employer that this duty required the use of an automobile. The employer did not furnish one, or pay specifically for this service; but in the performance of this duty Wilson arranged for the automobile, gathered up his crew, and was on the highway with them, going to the drilling site, when he was accidentally killed when the car he was in collided with another.

Each case must be decided upon its own facts; but the facts of the two cases are as near identical as ordinarily can be found. In each a head driller was the employee; each had a duty to perform for his employer after the usual work hours, in the performance of which it was necessary to use an automobile; neither was furnished an automobile or paid extra for its use,

though necessary in the performance of a duty; neither was paid extra for the additional work, and one was killed and the other injured in automobile accidents. Differences can always be pointed out in cases, but no substantial difference appears here.

The rule and some exceptions are stated in Gallman v. Spring Mills, 201 S.C. 257, 22 S.E.2d 715, 717, as follows:

"As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and therefore an injury suffered by accident at such time does not arise out of and in the course of his employment. There are two universally recognized exceptions to this rule * * *.

"These exceptions are: (1) Where in going to and returning from work, the means of transportation is provided by the employer, or the time thus consumed is paid for or included in the wages. (2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment. * * *"

Wilson was charged with the duty of seeing to it that the crew was at the drilling site at four o'clock; which duty he was performing when accidentally killed.

 Exception No. 2 mentioned by the South Carolina court was approved by us in McKinney v. Dorlac, supra [48 N.M. 149, 146 P.2d 869], where we said that an injury to an employe arises in the course of his employment if at a place where he may reasonably be, "and while he is reasonably fulfilling the duties of his employment or *engaged in doing something incidental [thereto]*."

When Wilson was killed he was fulfilling a duty of his employment, which was to see that his crew was at the drill site by four o'clock. It is insisted that his regular work was drilling the well. But the court found that his regular work under his contract included seeing to it that his crew was on hand at the proper hour; and he could only be certain of this by gathering them together and bringing them himself. He was doing more than "something incidental" to his employment when he was killed, although that would have been sufficient. We cited in the McKinney case with approval on this point, Young v. Dept. of Labor & Ind., 200 Wash. 138, 93 P.2d 337, 339, 123 A.L.R. 1171, in which the Washington court said: "The test adopted by this court for determining whether an employee is at a given time in the course of his employment is whether the employee was at the time engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's inter-

est. McGrail v. Dept. of Labor & Industries, 190 Wash. 272, 67 P.2d 851, and cases therein cited."

But it is said that Wilson had to come to the drilling site to perform his own duties. Quite true, but ordinarily he would not be burdened with the duty of seeing to it that the other drillers were there. None of the others had a comparable duty. Nor does it matter that Wilson was going to the drilling site himself; if he had a duty to perform concurrent with it, Clawson v. Pierce-Arrow Motor Co., 231 N.Y. 273, 131 N.E. 914, particularly if, as in this case, the principal purpose of his trip was to deliver four drillers at their place of work before four o'clock; a duty he either had to perform or see that it was done by others, or by the workmen themselves. The overall burden was on him to see to it that the men were on the job at four o'clock; how he was to perform the duty was within his reasonable discretion.

The Supreme Court of Colorado in O. P. Skaggs Co. v. Nixon, 101 Colo. 203, 72 P.2d 1102, 1103, in holding that a lawyer traveling in his own automobile without extra pay for his time or traveling expenses, was in the course of his employment in carrying files from Denver to his home at Greeley to be used in writing opinions. The Colorado court said: "If the accident occurs while the employee is doing something which the employer has directed and under the contract of employment may require the employee to do, we think that while the employee is doing it he fairly may be said to be acting in the course of his employment, and, if he is doing the thing directed to be done, as required, or if the manner of its doing is not specified, in a manner that is within the limits of a reasonable discretion on the part of the employee, then a resulting accident arises out of the employment and may fairly be said to be the result of a hazard incident to it."

Also see: Security State Bank of Sterling v. Propst, 99 Colo. 67, 59 P.2d 798; Comstock v. Bivens, 78 Colo. 107, 239 P. 869, both cited in the Skaggs case.

"Having the authority to determine the time, place and manner of performing his 'special mission,' he has the right to compensation to the same extent as if he had been sent directly to the park by the Superintendent. His visit to Ladera Park was reasonably contemplated by virtue of his official duties." Dauphine v. Industrial Comm., 57 Cal.App.2d 949, 135 P.2d 644, 646.

Also see, Mathews v. Naylor, 42 Cal.App. 2d 729, 109 P.2d 978; Fenton v. Industrial Comm., 44 Cal.App.2d 379, 112 P.2d 763.

In Kahn Brothers Co. v. Industrial Comm., 75 Utah 145, 283 P. 1054, the general rule was stated and then the exception, as follows: "An exception to this rule,.

however, is where an employee, either on his employer's *or his own time*, is upon some substantial mission for the employer growing out of his employment. In such cases the employee is within the provision of the act."

Also see the following: Allison, Inc., **v.** Bolling, 192 Okl. 213, 134 P.2d 980; Morgan v. Industrial Comm., 92 Utah 129, 66 P.2d 144; Sweatt v. Allen, 145 Fla. 733, 200 So. 348; Irwin-Neisler & Co. v. Industrial Comm., 346 Ill. 89, 178 N.E. 357; Commercial Casualty Insurance Co. v. Strawn, Tex. Civ.App., 44 S.W.2d 805; Messer v. Manufacturers Light & Heat Co., 263 Pa. 5, 106 A. 85.

■■ We are committed to the doctrine that the Workmen's Compensation Act must be liberally construed, and reasonable doubts resolved in favor of employees. Points v. Wills, 44 N.M. 31, 97 P.2d 374; Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342; Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000. So construing the act, we conclude that when an employee is sent by his employer on a special mission away from his regular work; or by the terms of his contract of employment he is burdened with a special duty incidental to, but aside from the labor upon which his wages are measured; while on such mission, or in the performance of such duty, the employee is acting within the course of his employment; notwithstanding no wages or remuneration is specified as applicable to such mission or duty; and notwithstanding an automobile is required for such performance which is furnished by the employee without cost to the employer. If an employee is accidentally injured while on such mission, or in the performance of such duty, the injury arises out of and in the course of his employment. Such is the case here.

■ The claimant Mrs. Wilson asserts, by cross-appeal, that she is entitled to judgment for 40% of $16 per week for 300 weeks; and the claimant Billy Wilson asserts that he is entitled to judgment for 25% of $18 per week for 300 weeks, and that the trial court erred in entering its judgment for less amounts. The statutes upon which our decision must rest, are the following:

"(j) The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act:

"1. A child under eighteen (18) years of age or incapable of self-support and unmarried, actually dependent upon the deceased.

"2. The widow, only if living with the deceased at the time of his death, or legally entitled to be supported by him and actually dependent, including a divorced wife entitled to alimony and actually dependent." Sec. 57-912, N.M.Sts.1941.

"(a) For total disability the workman shall receive sixty (60) per centum of his earnings, not to exceed a maximum compensation of eighteen ($18.00) dollars per week, nor to be less that a minimum compensation of ten ($10.00) dollars per week, during the period of such disability but in no event to exceed a period of five hundred fifty (550) weeks; Provided, however, that· where earnings are less than ten dollars ($10.00) per week then the compensation to be paid such workman shall be the full amount of such weekly earnings.

"In case death proximately results from the injury within the period of one (1) year, compensation shall be in the amounts and to the persons as follows: * *· *.

"(2) If there are dependents at the time of the death, the payment shall consist of not to exceed one hundred and fifty dollars ($150.00) for funeral expenses and the percentage hereinafter specified of the average weekly earnings, subject to the limitations of this act, to continue for the period of three hundred (300) weeks from the date of injury of such workman; Provided that the total death compensation payable in any of the cases hereinafter mentioned, unless otherwise specified, shall not be less than ten ($10.00) dollars per week nor more than eighteen ($18.00) dollars per week.

"If there be dependents entitled thereto, such compensation shall be paid to such dependents or to the person appointed by the court to receive the same for the benefit of such dependents in such portions and in such amounts as the court, bearing in mind the necessities of the case and the best interests of such dependents and of the public may determine, to be computed on the following basis, and distributed to the following persons:

"1. To the child or children, if there be no widow or widower entitled to compensation, twenty-five (25) per centum of earnings of deceased, with ten (10) per centum additional for each child in excess of two. (2) with a maximum of sixty (60) per centum, to be paid to their guardian.

"2. To the widow or widower, if there' be no children, forty (40) per centum of earnings not to exceed a maximum compensation of sixteen dollars ($16.00) per week.

"3. To the widow or widower, if there be one child, forty-five (45) per centum. of earnings." Sec. 57-918, N.M.Sts.1941.. Sec. 57-918, was amended in 1947, effective after the death of deceased and in 1949..

The child here is not entitled to compensation in an amount equal to 25% of the earnings of the deceased for the obvious. reason that the deceased left a widow. No specific amount is provided as compensation to be paid a child under such circumstances. If the child is entitled to. anything as compensation separate from that of the widow it would be under sub-

section (a) (2) 3 of 57-918, supra, as modified (if it is) by the second paragraph of 57-918(a) (2) supra, which provides for a division of the compensation between those entitled to it.

Some reference is made to the question of whether a child has a direct property interest in the award, in Neeley v. Union Potash & Chemical Co., 47 N.M. 100, 137 P.2d 312, but the question was not decided. No contention is made by any party that the decision of the trial court is not correct if the total allowance should be based on Sec. 57-918(a) (2) 3. The liability of the employer is limited in the present case to 45% of the earnings, not to exceed $18 per week for both the widow and one child, and the defendant and surety agree this is correct. The exact situation was not provided for. We will not decide the question as to the rights of the child under the statute, as neither claimant raises it, if we assume that the amount of compensation for both is limited to 45% of the workman's wages, not to exceed $18 per week, as the trial court held. A fee of $800 is allowed claimants' attorneys for services in this court.

The judgment of the district court should be, and is affirmed and it is so ordered.

LUJAN and COMPTON, JJ., concur.

SADLER, Justice (dissenting).

The very first enactment of a Workmen's Compensation Act in New Mexico provided an express exception from liability on the part of the employer for injuries sustained by the workman while on the way to assume the duties of his employment or after leaving such duties, the proximate cause of which was not the employer's negligence. The exception is provided by the italicized language appearing below taken from L. 1917, c. 83, § 12(*l*), to-wit: "The words 'injuries sustained in extra-hazardous occupations or pursuits,' as used in this act shall include death resulting from injury, and injuries to workmen, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, and injuries occurring elsewhere while at work in any place where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business, *but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence.*"

This exception was preserved in the revision of the law which took place with the enactment of L.1929, c. 113, appearing as section 12(*l*) thereof in almost the exact language of its first enactment. 1941 Comp. § 57-912 (12(*l*). It is the law today as it has been from the first adoption of the Workmen's Compensation Act. In my opinion, the claim before us is made in the very

teeth of this exception from liability. In order to escape it the majority must uphold findings of fact by the trial court resting on inferences deduced from the stipulated facts which cannot be supported as permissible.

Any consideration of the case necessarily begins with a recognition of two important and undisputable facts, namely, (1) the employer was under no obligation to provide housing for its employees at the well site, and (2) the employer was under no obligation to transport or arrange for the transportation of its employees to and from the place where their work was carried on. When the stipulation is appraised in the light of these two important and admitted facts against a background of statutory immunity from liability for injuries to employees suffered while traveling to and from work, unless caused by the employer's negligence, it is readily seen that there is left no basis whatever for the findings upon which the majority rest liability in the case at bar.

The claim was tried almost wholly on stipulated facts. The brief testimony taken following agreement on the stipulated facts concerned matters in no way pertinent to a decision on sufficiency of the evidence to support the controlling findings. So it is that the decisive question at issue is sufficiency of the stipulated facts to sustain in certain particulars three controlling findings made by the trial court. When analyzed, the three reduce themselves to the factual question: Did decedent's death in the tragic accident involved take place under such circumstances as fairly place it within the exception from liability provided by 1941 Comp. § 57-912 (12($l$)) as one resulting from "injuries * * * occurring while on his way to assume the duties of his employment * * *, the approximate cause of which injury is not the employer's negligence"?

It apparently was persuasively argued below, as it has been here, that because it was stipulated decedent as head driller had authority to "hire and fire" members of his crew whose arrival at the drill site at 4 p. m. daily (the hour for beginning work) it was his responsibility to enforce, and the further recitation therein of a car pooling agreement between decedent and members of his crew under which all rode to and from the job on a "share the ride" basis, he was placed under coverage of the Act throughout his travel to and from work, notwithstanding the exception from liability for injuries suffered during such period as provided by 1941 Comp. § 57-912 (12($l$)). The paragraph of the stipulation which the majority admit is basis for the finding that decedent must transport or arrange transportation for himself and members of his crew as a duty and responsibility "under his contract of employment" being finding No. 4, will not fairly bear the addition as

an inference of the language just quoted. It is treated by the majority as the basis for saying the decedent's labors at the time of his death "arose out of and in the course of his employment." This paragraph of the stipulation will not here be recopied since it is set out in full in the majority opinion. A reading and careful analysis of it is invited, however, for demonstrating the transparent reasoning employed by the majority to squeeze out of it this vital part of one of the basic findings upon which liability is made to rest.

But the weakness inherent in the effort to find support for the finding may be otherwise and abundantly demonstrated. If the stipulation could fairly be said to intend or mean what counsel persuaded the trial court to believe it does, as demonstrated by its finding No. 4, then we have this situation: The decedent as head driller had the "duty and responsibility * * * under his contract of employment," wholly *at his own expense*, save for the meager additional compensation which the trial court in equal mistake and error found was embraced in the driller's higher wage scale, to furnish the car for transporting his crew, buy the gas and oil to propel it and suffer the wear and tear incident to its use, unless through persuasion or coercion he could minimize these costs by securing contribution of a car a portion of the time by some other crew member possessing one.

The sheer folly of an agreement on the part of a drilling foreman to make any such wholesale contribution to the expense of conducting his employer's business is at once apparent and readily exposes it in true character, viz., as the arrangement between the driller and the members of his crew for the pooling of cars for riding to and from the job. Under it a number of workmen traveling daily to and from the same job rotate in furnishing a car on alternate days on a "share the ride" basis. Any effort to get more out of this paragraph of the stipulation than recitation of a "share the ride" arrangement between a group of workmen on the same job stretches the facts to the breaking point by imposing unthinkable burdens of expense on the driller under the facts found.

The portion of finding No. 8 complained of as being without substantial support in the evidence recites that decedent: " * * * was engaged in the performance of the duties of his employment and in the furtherance of the business of his employer at the time of the fatal accident."

The majority dispose of this claim of error in a summary manner by saying it is resolved adversely to defendant by their conclusion regarding finding No. 4. By the same token, having fairly demonstrated that their conclusion is wrong, the finding necessarily falls for lack of support. Furthermore, the mere fact that at the time of in-

jury the work being done was "in furtherance of the business of his employer" does not support the conclusion that it "arose out of" his employment. Some injuries, even though suffered while engaged in work not in furtherance of employer's interests, are compensable as arising out of the employment. Whether a given injury is compensable is not to be determined solely by a finding that at the time it was suffered the employee's work was "in the furtherance of the business of his employer," to use the language of the challenged finding.

Coming now to the portion of finding No. 9 complained of, we find the majority divide it into two parts for purposes of consideration. Part (a) is a finding that although the employer paid no mileage or other transportation allowance, *as such*, yet from the higher wage scale paid the deceased driller, found to have been $1.80 per hour as against $1.20 to $1.25 per hour paid other crew members, he was given reimbursement for the extra work performed by him in addition to his duties as driller at site of the well. Part (b) of finding No. 9 takes note of the portion of the stipulation which recites that, whatever the arrangements made between members of the drilling crew as to who furnished transportation, they "were of no concern to the employer" and that it in nowise directed same, save that the driller was charged with the responsibility of having his crew

arrive on the job in time to go to work at 4 p. m. each day. This part of finding No. 9 further recites that, notwithstanding the employer's complete lack of concern, control or supervision as to arrangements between members of the crew about their transportation, except to look to the deceased driller to see that his men arrived on the job in time to go to work; nevertheless, the employer knew of and acquiesced in the arrangement between Wilson, the driller, and other members of his crew for their daily transportation to and from the well site.

The claim of insufficiency of the evidence to support part (a) will first be discussed. In my judgment not only is there not an iota of proof to support it, but whatever evidence the record contains that possibly could have a bearing on the subject tends strongly to support a directly contrary conclusion. It may be conceded, as a decision cited in the majority opinion affirms, Gallman v. Spring Mills, 201 S.C. 257, 22 S.E.2d 715, that there are exceptions to the general rule against liability for injuries suffered by an employee while going to and from work. One of them is expressed in our statute providing such immunity, namely, where the injury is due to the employer's negligence. 1941 Comp. § 57-912 (12(*l*). Still another is where the employer pays all or part of the cost of transportation as held in the Gallman case, supra. But the existence of these exceptions affords no

justification for seizing upon the higher wage scale paid the head driller as support for a finding that it is reimbursement, in part, to him for services rendered in and about transporting himself and men to and from work. Obviously, there was no *express* promise to pay for this so-called "extra" service. The finding that it was a compensable service rendered the employer, rather than a purely personal arrangement between all members of the crew, the driller included, for their own comfort and convenience in daily getting to and from the job, is as weak and insupportable as the companion finding which seizes upon the driller's higher wage scale in an effort to locate pay for the service the former finding, in effect, creates. Both are too weak to stand alone when challenged and must lean on each other for badly needed support in the evidence, otherwise lacking.

There is nothing unusual in paying a larger wage to the head driller than to the men working under him. He not only must supervise, hire, fire and "boss" the job generally but, in addition, as a well known fact which may be noticed judicially, he has in his care and keeping highly expensive drilling equipment often approximating more than $200,000 in value. Naturally, he gets and deserves larger pay than do members of his crew. It does not appear from the record that the wage of this head driller was any greater than the prevailing scale of wages paid head drillers in that locality, regardless of whether the men of his crew resided at the well site, or some miles away and required transportation, as in the case at bar. Yet, from the mere circumstance that he was paid a higher wage than his men, *without more*, notwithstanding all head drillers are so paid, it is deduced that some of the prevailing wage paid him must constitute reimbursement to the driller for participating in a car pooling arrangement between him and members of his crew, operated for the mutual benefit of all. Any such finding is guesswork, pure and simple. There is not a shred of evidence to support it.

The portion of finding No. 9 designated part (b) in the majority opinion seeks to destroy the deadly effect of the stipulation declaring the employer's complete aloofness, disinterestedness and non-participation in the car pooling arrangement existing between the men comprising the drilling crew, the head driller included, except to the extent such unconcern might be qualified by employer's requirement, customary in all types of work, that the driller should be responsible for having his men at the well site by 4 p. m. each day, the hour for commencing work on time. This qualification of employer's stipulated aloofness from the car pooling arrangement does not mean, as has been shown, that the driller was to act as a sort of chaperon or guide to bring the men in his charge from Hobbs to the well site each day. It was merely declara-

tory of the duty resting on a foreman or boss, immemorially, to see to it that his men reach the job in time to go to work. The performance of the duty is naturally to be enforced, as it always has been, by disciplinary action such as suspending, or firing, tardy or delinquent workmen. Certainly, no practical, sensible or contemplated performance would call upon the driller personally to transport his crew from Hobbs each day, at his own expense, if need be, as the majority opinion leaves the matter. Accordingly, the recitation in this portion of finding No. 9 that the employer knew of and acquiesced in this "share the ride" arrangement between members of the drilling crew is meaningless and wholly innocuous insofar as concerns any bearing it properly may have on the rights of the parties.

The prevailing opinion states: "The defendant and the surety admit that under decisions of this court, the judgment of the district court is correct if the trial court's findings of fact numbers 4, 8 and 9 are supported by substantial evidence."

It could with all propriety have been added, what neither the majority nor counsel for claimant will question, that if the challenge to sufficiency of the evidence to support these findings is well taken, then the judgment of the district court is wrong and should be reversed. In my candid opinion, it has been abundantly demonstrated that the stipulated facts do not support the decisive findings upon which the judgment before us rests. We are not unmindful that our Workmen's Compensation Act is to be liberally construed. We have so often declared this to be the rule that it has become axiomatic. See Gonzales v. Chino Copper Co., 29 N.M. 228, 222 P. 903, for one of our early decisions so holding and Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000, as one of the latest. But liberal construction does not mean unreasonable construction, Martin v. White Pine Lbr. Co., 34 N.M. 483, 284 P. 115; nor make of the employer an insurer against any and all injuries suffered by an employee while in the course of his employment. Chicago Hardware Foundry Co. v. Industrial Commission, 393 Ill. 294, 65 N.E.2d 778.

In the prevailing opinion some weight is given the fact that before leaving Hobbs for the well site on the day in question, the deceased had performed a service for his employer in the hiring of a new man for his crew who was to, and did, accompany him and other members of the crew on what proved for four of them to be a fatal journey to the job. It is not my purpose to question that, had deceased been injured, while engaged in the hiring of this new man, as for instance in the journey to his home or rooming house to contact him, or otherwise attending this duty of his own employment, the injury would arise out of and in the course of his employment. I

do not agree, however, that having completed the performance of this duty, the fact of it afforded him Workmen's Compensation coverage throughout the journey following to his place of work in direct contradiction of the statute which declares coverage is denied for such period. Cf. Emmons v. Wilkerson, Ind.App., 89 N.E.2d 296.

The proper decision of this case rests so completely on a correct appraisal of the facts which, as has been shown, do not support the findings made, that decided cases can afford little aid in reaching a correct result. Nevertheless, the decisions which follow, insofar as analogous, support the conclusion there is no liability here. Emmons v. Wilkerson, supra; Melnick v. Ideal Container Corp., 131 N.J.L. 518, 37 A.2d 648; Republic Underwriters v. Warf, Tex. Civ.App., 103 S.W.2d 871; McKenzie v. Industrial Commission, Utah, 205 P.2d 827; Jones v. Lozier-Broderick & Gordon, 160 Kan. 191, 160 P.2d 932. See, also, 1 Schneider on "Workmen's Compensation", 2d Ed., § 267, p. 779.

A careful analysis of the several cases heretofore decided by this court under somewhat analogous conditions discloses that not one of them can serve as a precedent for the decision here announced by the majority. See Cuellar v. American Employers' Ins. Co., 36 N.M. 141, 9 P.2d 685; Caviness v. Driscoll Construction Co., 39 N.M. 441, 49 P.2d 251; McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867; Barrington v. Johnn Drilling Co., 51 N.M. 172, 181 P.2d 166; Parr v. New Mexico State Highway Department, 54 N.M. 126, 215 P.2d 602. Negligence of the employer was made the basis of recovery in the Cuellar case; recovery was denied in the Caviness case; the employer paid for travel time in the Dorlac case and so on as to each cited, some distinguishing feature is held to warrant recovery or recovery is denied.

As to other jurisdictions, my research likewise fails to disclose a single supporting authority for the prevailing opinion. There is not a case cited in it that does not have distinguishing features. In the one case of which the prevailing opinion chooses to say it is "exactly in point", Olson Drilling Co. v. Industrial Commission, 386 Ill. 402, 54 N.E.2d 452, the employee though traveling a portion of the same route traversed in going to and from work daily had in his possession certain drilling reports which he was directed to deliver to the employer's office in Olney, Illinois, located at a point which would cause a detour from his regular route in order to make delivery. Before reaching the point of detour, however, he was injured in an automobile collision. The injury was held to "arise out of" the employment because at the very moment of its occurrence, the employee was engaged on this special mission for the employer. No such condition prevails here. But for the fact of the special mission on which

the employee was engaged at time of injury in the Olson case, there could have been no recovery. The only duty or mission with which the driller in the case at bar had anything to do before arriving at the well site, the hiring of a new man, had been fully performed before leaving Hobbs and at time of death he was in the very act of doing exactly what the statute declares shall not be deemed an "extra-hazardous occupation or pursuit" namely, "on his way to assume the duties of his employment". 1941 Comp. § 57-912(*l*).

Being well convinced the judgment rendered is erroneous and should be reversed and the majority concluding otherwise, for the reasons given,

I dissent.

McGHEE, J., concurs.

On Motion for Rehearing

BRICE, Chief Justice.

On motion for rehearing the defendant contends: "There is fundamental error in the case for the reason that the stipulations contained in the record are in dispute and such that no one knows what the evidence is, which leaves the validity of the findings of fact uncertain and unsettled; therefore, the case should be remanded for partial retrial in order to do justice to the parties."

No question in regard to the stipulation was raised prior to the filing of the motion for a rehearing. The only assignments of error are as to conclusions of fact made by the trial court in its findings from the stipulated facts. Indeed only assignment No. 3 attacked any specific finding of fact and that was finding No. 9, although we considered objections to findings 4 and 8 made in defendant's argument. In again reading over the transcript we have not the slightest doubt but that the stipulation as outlined in our original opinion was agreed to. Defendant's counsel was asked regarding whether he would agree to this or that fact, and he did or did not agree, as he was pleased to stipulate. In one place this occurred:

"Mr. Hanners: We will stipulate that if it embraces this additional element that the employer looked to the man Wilson, the driller in charge of the crew, to see that his crew arrived at the drill site.

"Mr. Brand: *We have already stipulated that.* (Our emphasis.)

"The Court: All right, with that *additional stipulation* the stipulation is admitted. (Our emphasis.)

"Mr. Brand: I believe that is all.
 * * * * * *

"The Court: Now, gentlemen, are there *any further* factual stipulations?" (Our emphasis.)

104

Then the matter was gone into further by the parties.

"Mr. Brand: I can't agree as to that because I do not know that as a fact.

"The Court: You may put her on and establish that fact by testimony."

Much more was said along this line, showing that the parties did agree on the stipulated facts as stated in our opinion.

Complaint is here made regarding Finding of Fact No. 4, which is: "That it was the duty and responsibility of Roy Wilson, under his contract of employment as the driller in charge of such crew, to see that his crew was fully staffed and to see that such crew arrived at the drill site before four o'clock p. m. and remained there throughout their eight hour work period; and that it was the duty and responsibility of Roy Wilson, under his contract of employment as the driller in charge of such crew, to either transport himself and the members of his crew to and from the drill site or to arrange for their transportation by some other member of his crew." And yet this finding was in substance a request of defendant. In fact the following requested findings of fact made of the court by defendant, are the principal facts upon which our opinion was based:

"*That the said Roy Wilson, as driller, as a part of his duties and responsibilities, was to keep a full crew employed for his* employer and to see that they arrived at the place where the well was being drilled at approximately 4:00 o'clock in the afternoon and to remain there through the eight-hour working period; that said Wilson had the authority to hire and fire other members of his crew; that on the morning of May 18th, 1947, said Wilson had employed at Hobbs a man by the name of Tidwell to fill a vacancy in the drilling crew.

"That the said employer had made no arrangements with said Wilson or any employee of the drilling crew as to the manner in which they would travel in order to get to the scene of their work, or in returning to their respective homes upon completion of such work period; that no compensation was paid or promised to said Wilson or any member of the crew by the employer for the time consumed in going to and returning from such work, and that no mileage or other allowance for transportation was being paid to said Wilson or any member of the crew to compensate them for transporting themselves to and from work; that whatever arrangements were made between the members of the drilling crew as to who furnished transportation were of no concern to said employer and were things in which the employer had no interest and which it did not in any wise direct; that said employer had no supervision or control over said crew members while they were en route to and from the

drilling site; that whatever the arrangements may have been, they were left from day to day solely to the members of the drilling crew; *that the employer looked to said Wilson as driller and in charge of said crew to see that his crew arrived at the drill site in time to commence their work period beginning at 4:00 o'clock in the afternoon."* (Our emphasis.)

The defendant has filed with its brief an affidavit made by an official repudiating the stipulation. We are not inclined to reverse this case on such affidavit. There is nothing uncertain about the stipulation, and the findings of fact are supported by it.

Defendant states: "The Court committed fundamental error in determining certain material facts in this case because it failed to disregard as surplusage findings of fact based on stipulations of fact and thereupon determine the facts *de novo."*

It is contended under this point that this court should ignore the findings of fact made by the court and determine the case upon the stipulations of the parties. It is probable that this case should have been presented to the court upon the stipulations of facts inasmuch as we are as competent as the district court to determine ultimate facts from stipulations. However that may be, each of the parties requested the court to make findings of fact and presented requests for specific ones. The court passed upon them and made its own findings, but

substantially as requested by the parties. If the parties elected to try the case in this manner in the district court and in this court (as they have), we see no reason why we should upset such proceedings.

Defendant states another contention as follows: "In support of the findings of fact made by the trial court, this court relied upon certain unagreed-to proposals (of stipulation) of appellees as actual 'stipulation' although the record shows some of these relied-upon proposals abandoned by appellees, and stipulations to the contrary were substituted by the parties in lieu of those other proposals of appellees relied upon by this court."

We find nothing under this contention that materially changes our view of the facts stipulated by the parties.

It is stated by the defendant that "Findings of fact numbered 4, 8 and 9 lack support of substantial evidence."

We have reconsidered these findings and are of the opinion that they are supported by the facts stated in the stipulation of the parties.

The following statement made by this court in its opinion is objected to, to-wit: "The suggestion that no part of the transportation was of any concern to the employer is obviously not correct." This statement is not material to a decision, and may be eliminated. The writer was, and

still is, of the opinion that the employer was vitally interested in having the men transported to the work by four o'clock each afternoon, so that they could commence their tower at that hour. This statement in the opinion does not affect the result in the slightest.

■ It should be stated that none of the propositions we have heretofore considered in this opinion had for its basis fundamental error and under Supreme Court Rule 20, 1941 Comp. § 19-201, could not .as a matter of right be raised by defendant on motion for rehearing.

Defendant's Point V is as follows: "The Court erroneously held that an employee injured while traveling to his usual working place in an automobile on the public highway of New Mexico is, under the facts in the case, entitled to compensation under the Workmen's Compensation Act, and in so doing failed to follow and apply an earlier decision interpreting the controlling statute, Section 57–912 (III) (1), New Mexico Statutes 1941 Annotated."

This point is the only one that gives the majority of the Court who signed the original opinion any concern.

Section 57-912(*l*) N.M.Sts. 1941, referred to, is as follows: "The words 'injuries sustained in extra-hazardous occupations or pursuit,' as used in this act (§§ 57-901–57-931) shall include death result-ing from injury, and injuries to workmen, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, *and injuries occurring elsewhere while at work in any place where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business,* but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the approximate cause of which injury is not the employer's negligence." (Emphasis ours.)

If defendant's contention is correct then we have committed fundamental error, Jaffa v. Lopez, 38 N.M. 290, 31 P.2d 988 and this question should be decided.

Before expressing an opinion, we call attention to the fact that this statute was pleaded in defense (as here) in McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867, and in Barrington v. Johnn Drilling Co., 51 N. M. 172, 181 P.2d 166. In each of these cases the employee was killed on a highway away from the employer's premises (as in the present case) and if defendant is correct these cases should be disapproved. Defendant cites Hernandez v. Border Truck Lines, 49 N.M. 396, 165 P.2d 120, in which we held that a milk truck owner in delivering milk to customers along the highway was not engaged in an extra-hazardous occupation so as to make the truck

driver's accidental death compensable under the Workmen's Compensation Act. The argument is that we held that the driving of a truck along a public highway was not extra-hazardous and therefore not within the Workmen's Compensation Act. We did so hold, but we were construing our Workmen's Compensation statute which does not provide that such a business or occupation is one for which compensation is provided by the statute and upon that ground compensation was denied. Paradoxically, defendant asserts that McKinney v. Dorlac, supra, should not be overruled, although the workman was killed while driving his car along the highway on his way from Albuquerque to his regular work, which was in Roswell. The day he was traveling was treated as a part of his employment, for which he received his regular wages, but his injury occurred at no more "extra-hazardous place" than where Wilson was killed, and the same can be said of the employee's injury that was involved in the Barrington case, supra.

Each of the cases was decided upon the theory that the employee was acting within his contract of employment, and that his injury arose out of and in the course of his employment. It is significant that in Chief Justice Sadler's dissenting opinion in the McKinney case (with whom Justice Bickley concurred,) that he never based his dissent on the theory here contended for,

but upon the latter part of the same section, to the effect that "injuries sustained in extra-hazardous occupations * * * shall not include injuries to any workman occurring while on the way to assume the duties of his employment." [48 N.Mex. 149, 146 P.2d 872.] If there had been any doubt about this question in the minds of these able justices it would have been mentioned.

The statute in question was copied from the statutes of Wyoming. The Supreme Court of that state had the identical question to decide in Re Jensen, 63 Wyo. 88, 178 P.2d 897, 908. The exact statute was pleaded as a defense. The workmen were a drilling crew; their traveling expenses to and from the well were paid by the defendant company. The head driller, Long, was killed and the tool pusher Jensen severely injured in an accident that occurred on the highway while the men were going home from their work. The transportation arrangements were about the same as in this case, except the owner of the car was paid 7 cents per mile as transportation expense. The employer had no control over the transportation. Claimant had no car and was not paid anything by the company for transportation; but it paid the car owner for transporting all the crew. The decision for Jensen was based upon the fact that he was transported to work at the expense of the company and the fact that he was injured on the highway, away

108

from the well location while on the way home, was apparently not thought to be a defense. Many cases are cited with approval, among them our case of McKinney v. Dorlac, supra. It was said: " * * * Just here we may recall that the language 'while at work' appearing in subdivision (*l*) of section 124–106–7 W.R.S.1931 hereinbefore quoted has been decided to be synonymous in meaning with the phrase 'in the course of (his) employment'. It was so held, and it would seem correctly, by the Supreme Court of New Mexico in McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867 construing the statute of that state which as before noted so closely resembles our subdivision (*l*) aforesaid." Also see Standard Oil Co. v. Smith, 56 Wyo. 537, 111 P.2d 132, where a similar situation was considered, and compensation allowed the employee.

 It is evident that this court and the Supreme Court of Wyoming have decided that the statute in question was never intended to deprive a workman of compensation, who at the time of his injury was acting within his contract of employment, if his injury "arose out of and was suffered in the course of his employment."

As was said in Rumley v. Middle Rio Grande Conservancy Dist., 40 N.M. 183, 57 P.2d 283, 286, " * * * it is the business or undertaking of the employer, not the particular duty or task of the employee at the time (of the injury), which furnishes the test on whether the act is applicable." In this case the business of the employer was drilling oil wells, which is an extrahazardous business.

The controlling statutes as to compensation are:

" 57–905. * * *

"Any employer who has elected to and has complied with the provisions of this act, including the provisions relating to insurance, shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as in this act provided; and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and commonlaw rights and remedies for and on account of such death of, or personal injury to any such employee and accruing to any and all persons whomsoever, are hereby abolished except as in this act."

57–906:

"The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

"(a) Where, at the time of the accident, both employer and employee are subject to the provisions of this act; and where the employer has complied with the provisions thereof regarding insurance.

"(b) Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment."

"(c) Where the injury or death is proximately caused by accident arising out of and in the course of his employment, and is not intentionally self-inflicted."

57-902.

"* * * and every private person, firm, or corporation engaged in carrying on for the purpose of business, trade or gain within this state, either or any of the extra-hazardous occupations or pursuits herein named or described and intended to be affected hereby, (which) shall employ therein as many as four [4] workmen, except as hereinafter provided, (such employer) shall become liable to, and shall pay to any such workman injured by accident arising out of and in the course of his employment in any such occupation and pursuit, and, in case of his death being occasioned thereby, to such person as may be appointed by the court to receive the same for the benefit of his dependents, compensation in the manner and amount, at the times herein required, * * *."

 The maxim "expressio unius est exclusio alterius" is only an aid to construction and not a rule of law, Neuberger v. Com'r of Internal Revenue, 311 U.S. 83, 61 S.Ct. 97, 101, 85 L.Ed. 58, and is of limited application, State ex rel. O'Bannon v. Cole, 220 Mo. 697, 119 S.W. 424, 22 L.R.A.,N.S., 986. A statute which uses the word "including" (certain things) is not limited in meaning to that included. Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L. Ed. 301.

 The words "injuries sustained in extra-hazardous duties incident to the business" are not so used in the Workmen's Compensation Act. It probably had reference to Sec. 57-902, partially quoted. But in view of Secs. 57-902 and 57-906; and of the fact that the statute in question does not purport to be exclusive; and of our previous decisions; we hold that "The right to the compensation provided for in this act, * * * for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases" when the conditions and circumstances stated and required by Sec. 57-906 are present. An additional fee of $250 is allowed plaintiffs' attorneys for services here.

The motion for a rehearing will be overruled.

It is so ordered.

LUJAN and COMPTON, JJ., concur.

SADLER and McGHEE, Justices (dissenting in part).

We concur in the prevailing opinion in so far as it declines to overrule McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867, and Barrington v. Johnn Drilling Co., 51 N.M. 172, 181 P.2d 166, on the effect the opinions in those cases give the language from

1941 Comp. Sec. 57-912(*l*) italicized in the quotation therefrom next hereinafter, to-wit: "The words 'injuries sustained in extra-hazardous occupations or pursuit,' as used in this act (§§ 57-901–57-931) shall include death resulting from injury, and injuries to workmen, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, *and injuries occurring elsewhere while at work in any place where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business,* but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the approximate cause of which injury is not the employer's negligence." (Emphasis ours.)

We dissent from the remainder of the prevailing opinion. We think there is enough confusion and uncertainty about what was actually agreed or stipulated below to render it only fair and just to remand the case for a new trial where the facts may be fully developed as a basis for conclusions to be drawn. This is especially true of that portion of the stipulation relating to the car-pooling arrangement under which, as held by the majority, the duty of transporting his crew of four to and from work at his own expense is imposed on the driller.

It would be repetitious for us again to set out the reasons which led us to dissent from the majority opinion filed herein, following submission. For the reasons stated in the dissenting opinion in this case, and for the added reason that confusion and uncertainty exist as to the facts on which defendants are held bound, we are unable to join in denying the motion for rehearing. We think it should be granted. Because the majority conclude otherwise.

We dissent.

## On Second Rehearing.

### PER CURIAM.

This cause coming on to be heard on a second motion for rehearing, Chief Justice LUJAN, Mr. Justice SADLER, Mr. Justice McGHEE and Mr. Justice COMPTON sitting, and the court having considered the briefs of counsel and being well and sufficiently advised in the premises, presents a division of opinion as follows: Mr. Justice SADLER and Mr. Justice McGHEE remain of the same opinion expressed in their dissent from the original opinion and think the opinion filed should be withdrawn and the judgment appealed from reversed; Mr. Chief Justice LUJAN and Mr. Justice COMPTON think the opinion on file should stand as written, thus adhering to the views entertained by them at the time they expressed their concurrence by signing the same.

Mr. Justice McGHEE is of opinion that this opportunity should be availed of to overrule Flaska v. State, infra, holding only

justices participating at original hearing may participate on rehearing and that Mr. Justice COORS who became a member of the Court on January 1, last, should be called in to participate in determining the present motion or, if for any reason he prefers not to participate, that a district judge should be called in to sit in his place.

Wherefore, it thus appearing that a majority of the court cannot be secured favoring the withdrawal of the opinion filed (if in fact could be secured from a full court) and the court being without right under the decision rendered in Flaska v. State, 51 N.M. 13, 177 P.2d 174, to call in another justice or judge not participating in the original decision, to participate in the consideration of this motion, the opinion heretofore filed, affirming the judgment, will stand. It is so ordered.